**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CONTINENTAL MOTORS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 12-0221-WS-C** |
| | ) | |
| **JEWELL AIRCRAFT, INC.,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on defendants' Motion to Dismiss (doc. 3).  The Motion has been extensively briefed and is now ripe for disposition.

**I.      Relevant Background.**

The case of *Larry Crouch, et al. v. Teledyne Continental Motors, Inc.*, Civil No. 10-0072-KD-N (the "*Crouch* Action"), was something of a cause célèbre in this District Court.  During the 20 months that the *Crouch* Action was active on Judge DuBose's docket, the parties racked up more than 400 docket entries, culminating in a three-week jury trial that spanned from July 18, 2011 through August 5, 2011.  Although those proceedings concluded (at least, insofar as this District Court is concerned) some time ago, the instant litigation emerged as a spin-off from the *Crouch* Action when the parties herein could not agree as to who must foot the bill for the seven-digit attorney's fees accrued by the defendant in that case.

At issue in the *Crouch* Action was whether Teledyne Continental Motors ("Continental") was liable for a November 2006 airplane accident in Bardstown, Kentucky, which resulted in serious permanent injuries to Larry Dale Crouch and Teddy Lee Hudson.  According to the First Amended Complaint in the *Crouch* Action, Continental had manufactured and sold a magneto that was installed as the ignition source for the subject aircraft's engine in March 2005.[1]  The

---

[1]      A magneto produces an electrical current that provides a continuous ignition source to an aircraft engine for production of power.

*Crouch* plaintiffs maintained that the aircraft had lost power and crashed when a fractured engine mount flange had caused the magneto to become displaced, thereby disrupting the ignition source to that engine.

The First Amended Complaint in the *Crouch* Action alleged, *inter alia*, that Continental (by and through its agents, servants, employees and contractors) had negligently designed, engineered, tested, manufactured and installed the magneto.[2]  In July 2011, Judge DuBose entered a pair of orders identifying four claims joined for trial between the plaintiffs and Continental, to-wit: (i) whether the magneto housing flange sold by Continental was unreasonably dangerous, giving rise to strict liability for its failure; (ii) whether Continental negligently failed to warn potential users that the magneto was unreasonably dangerous after the product was sold; (iii) whether Continental breached a warranty by providing a product that was not merchantable and fit for its intended use; and (iv) whether Continental was liable to the plaintiffs "for negligent installation of the magneto by John Jewell and/or Jewell Aircraft, Inc. (Jewell)," on the theory that John Jewell and/or Jewell Aircraft, Inc. negligently installed the magneto and were acting as Continental's agents at that time.  (*See* Civil Action No. 10-0072-KD-N, at docs. 320, 325.)  At the close of the plaintiffs' case during the trial of the *Crouch* Action, however, those plaintiffs "withdrew the Negligent Installation Claim in open court." (Doc. 1-1, ¶ 43.)  The *Crouch* Action went to the jury on the other three claims, all of which sought to impose liability on Continental for its own acts and omissions, as contrasted with the negligent installation claim, which had sought to hold Continental vicariously liable for the actions of a third party (*i.e.*, John Jewell and/or Jewell Aircraft, Inc.).  The jury found in Continental's favor on all of those claims and causes of action, awarding the *Crouch* plaintiffs nothing.  (*Id.*, ¶ 44.)

Having been vindicated by the verdict following a bruising, grueling, drawn-out legal struggle in the *Crouch* Action, Continental celebrated its victory by initiating new litigation

---

[2]      Although the parties have not filed copies of those pleadings herein, the Court takes judicial notice of the contents of pleadings from the *Crouch* Action, all of which are a matter of public record and are maintained on file by the Clerk of Court.  *See generally Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases."); *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts.").

seeking recovery of its *Crouch* Action attorney's fees.[3]  The defendants in this action consist of Jewell Aircraft, Inc. ("JA"), John Jewell Aircraft, Inc. ("JJA"), and John Jewell ("Mr. Jewell") (collectively, the "Jewell Defendants"), and were neither *Crouch* Action plaintiffs nor parties to the *Crouch* Action (as it was litigated in this judicial district).[4]

The Complaint in this case – which was initially filed in Mobile County Circuit Court prior to being removed to this District Court on diversity grounds – alleges three causes of action against the Jewell Defendants.  The first two claims sound in breach of contract, and are centered on a Product Support Agreement (the "Agreement") entered into between Continental and JA on or about January 1, 2005.  Neither JJA nor Mr. Jewell was a signatory to the Agreement.  By the terms of that Agreement, JA "agrees to indemnify and hold [Continental] harmless from and against all claims, demands, obligations and liabilities … to the extent that such claims, demands, obligations or liabilities have resulted from or arisen out of any act or omission of [JA], its officers, agents, representatives, servants, or employees."  (Doc. 1-1, ¶ 26 & Exh. A at ¶ 21.)[5]  Continental contends that all three of the Jewell Defendants "have breached the Produce

---

[3]     The court file does not reflect the precise amount of attorney's fees expended by Continental in connection with the *Crouch* Action.  Nonetheless, it appears that such figure stretches comfortably into the millions of dollars.  In a Motion for Award of Fees and Costs filed in the *Crouch* Action in August 2011 after the jury verdict, Continental claimed that "the total amount of fees and costs incurred to date in the defense of this case is $2,090,633."  (Civil Action 10-0072, doc. 396, at 26.)  No doubt that amount marched ever-higher thereafter, thanks to post-trial motion practice and the appeal of the jury verdict in that case.  Incidentally, Judge DuBose denied Continental's claim for an award of attorney's fees from the *Crouch* plaintiffs, reasoning that those plaintiffs had not conducted themselves in a manner that was "tantamount to bad faith" so as to expose them to the narrow fee-shifting provisions of 28 U.S.C. § 1927.  (Civil Action 10-0072, doc. 411, at 3.)

[4]     To be technically accurate, the named plaintiff in this case is "Continental Motors, Inc.," rather than "Teledyne Continental Motors, Inc.," which was the named defendant in the *Crouch* Action.  However, the Complaint in this case identifies Continental Motors, Inc. as the successor in interest to Teledyne Continental Motors, Inc.  (Doc. 1-1, ¶ 1.)  That proposition does not appear to be controversial or contested, at least not at the Rule 12(b) stage.  For purposes of this Order, then, the Court will refer to both the predecessor and the successor entity interchangeably as "Continental," so as to avoid any misleading implication that the *Crouch* Action defendant and this action's plaintiff are not the same entity.

[5]     Of some importance for the instant Motion to Dismiss, the Agreement included a forum-selection / choice-of-law provision stating, in part, as follows:  "[T]he performance of the parties shall be construed and governed according to the laws of the State of Alabama ….  By (Continued)

[*sic*] Support Agreement by and through their failure and/or refusal to indemnify, defend and hold [Continental] harmless in regards to the Crouch and Hudson Plaintiffs' claims against [Continental]."  (Doc. 1-1, ¶ 50.)  In a separate claim, Continental brings a cause of action against all Jewell Defendants under Kentucky law for common-law indemnity.  All defendants now seek dismissal of all claims against them on multiple grounds.

## II.    Legal Standard for Motion to Dismiss.

On a motion to dismiss for failure to state a claim, "the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged … in the complaint as true."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009); *see also Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.");  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (similar).

To withstand Rule 12(b)(6) scrutiny, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] their claims across the line from conceivable to plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted).  Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  As the Eleventh Circuit has explained, *Twombly/Iqbal* principles require that a plaintiff plead a facially plausible claim to relief, whose allegations are "enough to raise a right to relief above the speculative level."  *Speaker*, 623 F.3d at 1380 (citations omitted).  The factual content of the complaint must "allow[] the court to draw the reasonable inference

---

executing this Agreement, each party consents that personal jurisdiction in the State of Alabama may be obtained against any party not present in the State of Alabama through service upon it by certified mail or the equivalent method of postal delivery ….  Each party further agrees that any action or arbitration brought under or relating to this Agreement or to the dealings between the parties will be brought and conducted only in Alabama."  (Doc. 1-1, Exh. A, at ¶ 36.)

that the defendant is liable for the misconduct alleged." *Id.* (citations omitted); *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11ᵗʰ Cir. 2009) ("A plaintiff must provide enough factual allegations, which are assumed to be true, to raise a right to relief above the speculative level.").

More generally, it bears emphasis that Rule 12(b)(6) is a low threshold for a plaintiff to overcome. This Court cannot and will not dismiss a claim merely because recovery on the merits at trial appears doubtful or dubious. *See, e.g., Speaker*, 623 F.3d at 1380 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely") (citation omitted). A Rule 12(b)(6) motion is not a vehicle for forecasting the plaintiff's likelihood of success on the merits, and jettisoning claims based on such predictions.

## III.   Analysis.

The Jewell Defendants have now jointly moved to dismiss the Complaint in its entirety on the following grounds: (i) personal jurisdiction is lacking as to JJA and Mr. Jewell; (ii) dismissal (or alternatively, transfer) of this action is warranted under the doctrine of *forum non conveniens* and/or 28 U.S.C. § 1404(a); and (iii) the Complaint fails to state a claim on which relief can be granted. Each of these arguments will be considered in turn.[6]

---

[6]     In a footnote, defendants also state in conclusory terms that the doctrines of collateral estoppel or *res judicata* somehow forbid Continental from bringing indemnity claims against them. (*See* doc. 3, at 4 n.1.) Movants not having fleshed out this argument or lent it any substance, this Court will not undertake to develop it on their behalf. *See, e.g., Vision Bank v. Merritt*, 2010 WL 5474161, *4 (S.D. Ala. Dec. 8, 2010) ("If Merritt wishes to pursue such a legal theory, it is incumbent on him to perform the necessary research and develop that argument, rather than stating it in the vaguest of outlines and expecting this Court to fill in the gaps."); *York v. Day Transfer Co.*, 525 F. Supp.2d 289, 301 n.10 (D.R.I. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citation omitted); *Federal Ins. Co. v. County of Westchester*, 921 F.Supp. 1136, 1139 (S.D.N.Y. 1996) ("Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk."). Leaving aside these principles, the Court does not perceive how the *Crouch* Action could reasonably be deemed to preclude Continental from asserting indemnity claims against the Jewell Defendants at this time; after all, such claims likely would have been premature had they been interposed in the *Crouch* Action directly. *See, e.g., King v. Capital Amusement Co.*, 130 So. 799, 800 (Ala. 1930) (for contract of indemnity against liability, "the indemnitee's case arises on the contract when the liability is fixed and ascertained"); *Choice Building, Inc. v. Complete Landscape Service, Inc.*, 955 So.2d 437, 441 (Continued)

**A.      Whether Personal Jurisdiction Lies as to JJA and Mr. Jewell.**

**1.      The Parties' Positions as to Personal Jurisdiction.**

Without question, personal jurisdiction properly lies as to defendant JA, the signatory of the Agreement with Continental.  In that Agreement, JA expressly agreed that any litigation brought under or relating to that Agreement was to be brought and conducted solely in Alabama. In that same clause, JA consented to personal jurisdiction in Alabama.  Such forum-selection clauses are routinely upheld as valid and enforceable.  *See, e.g., Polaris Sales, Inc. v. Heritage Imports, Inc.*, 879 So.2d 1129, 1132 (Ala. 2003) (describing "well-established law of Alabama that forum-selection clauses will be enforced so long as they are not unfair or unreasonable under the circumstances").[7]  Defendant JA has not suggested otherwise; to the contrary, defendants wisely concede that "JA does not dispute personal jurisdiction in this case."  (Doc. 17, at 16.)

However, defendants JJA and Mr. Jewell argue that there is no personal jurisdiction as to them because (i) they were not signatories to the Agreement; and (ii) they lack the requisite minimum contacts with the State of Alabama.  On the latter point, JJA and Mr. Jewell make a factual showing, *inter alia*, that JJA is a Mississippi corporation; that Mr. Jewell is a Mississippi resident; that JJA has never done business in Alabama, has never had agents or employees in Alabama, has never advertised or provided services in Alabama, and has never maintained an office in Alabama; that Mr. Jewell has never done business in Alabama; and that all of JJA's work on the aircraft at issue in the *Crouch* Action was performed in Mississippi, in connection with which the aircraft never passed through or over Alabama.  (Jewell Aff. (doc. 3, Exh. A, ¶¶ 1, 5-12.)

---

(Ala.Civ.App. 2006) (indemnitee's indemnity action does not accrue until trial court first adjudicates its liability in the underlying action).

[7]      Of course, forum selection clauses may form the basis for the proper exercise of personal jurisdiction in the designated forum over all parties to a contract.  *See, e.g., Ex parte Trinity Automotive Services, Ltd.*, 974 So.2d 1005, 1010 (Ala.Civ.App. 2006) (explaining that litigant may give consent to a court's personal jurisdiction via "an agreement by both parties to a contract that they will submit to the courts of a particular forum a dispute arising from the contract"); *Branch Banking and Trust Co. v. W.K. Brent Broaderip*, 2010 WL 3955794, *4 (S.D. Ala. Sept. 21, 2010) ("it is well-settled that parties may consent to personal jurisdiction through forum selection clauses in contractual agreements") (citations and internal marks omitted).

Plaintiff's response to these personal jurisdiction arguments is twofold. First, Continental maintains that JJA and Mr. Jewell are bound by JA's contractual consent to personal jurisdiction because all of the Jewell Defendants are alter egos of each other. Second, Continental asserts that even under a traditional minimum contacts analysis, personal jurisdiction is properly exercised over JJA and Mr. Jewell in this District Court without regard to the terms of the Agreement.

### 2. *"Alter Ego" Theory of Personal Jurisdiction.*

In plaintiff's view, the exercise of personal jurisdiction is proper as to JJA and Mr. Jewell because JA contractually assented to personal jurisdiction, and the Agreement is properly extended to cover both JJA and Mr. Jewell as JA's alter ego.[8] The "alter ego" analysis is a non-starter at this time, as a matter of law. To be sure, Continental correctly identifies a line of Alabama precedents in which courts have pierced the corporate veil where a defendant is an alter ego of another entity.[9] Those same decisions stress, however, that "[p]iercing the corporate veil … is not a power that is exercised lightly." *Gilbert v. James Russell Motors, Inc.*, 812 So.2d 1269, 1273 (Ala.Civ.App. 2001). In advancing this argument, Continental offers evidence and allegations that JA controls and dominates over its wholly- owned subsidiary, JJA. But mere control and dominion does not suffice to trigger alter ego status. In that regard, Alabama law is clear that the corporate veil cannot be pierced unless the dominant corporation (a) misused that control, and (b) proximately caused harm to the plaintiff through such misuse. *See, e.g., Heisz v. Galt Industries, Inc.*, --- So.3d ----, 2012 WL 29190, *11 (Ala. Jan. 6, 2012) (reaffirming that

---

[8] In its brief, Continental suggests that examination of the alter-ego issue at the Rule 12(b)(6) stage is impermissible because the Complaint specifically pleads that JA, JJA and Mr. Jewell are alter egos of each other, and well-settled law obliges courts to accept well-pleaded facts in the Complaint as true for Rule 12(b)(6) purposes. (Doc. 10, at 39-40.) The Court disagrees. Whether an "alter ego" relationship exists between or among these defendants is not an unvarnished statement of fact to be accepted at face value on a motion to dismiss, but is instead a legal conclusion entitled to no deference in a Rule 12(b)(6) analysis. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (although well-pleaded facts are accepted as true on a motion to dismiss, "[w]e are not, however, required to accept the labels and legal conclusions in the complaint as true").

[9] All parties appear to be in agreement that Alabama law governs the "alter ego" discussion in this case; therefore, the Court follows suit, without conducting *sua sponte* a choice-of-law analysis that the parties neither solicited nor developed.

mere domination and control are insufficient basis to pierce corporate veil, and that "there still must be evidence that that control was misused before the corporate veil can be pierced"); *Kwick Set Components, Inc. v. Davidson Industries, Inc.*, 411 So.2d 134, 137 (Ala. 1982) (to establish liability under "instrumentality doctrine," the "essential elements" are that "the dominant corporation must have controlled the subservient corporation, and … the dominant corporation must have proximately caused plaintiff harm through misuse of this control").[10]

Continental has not addressed these prerequisites for piercing the corporate veil in any meaningful way. It has not alleged, much less shown, that JA misused its control over JJA, that such misuse of control harmed Continental, or that any injustice or inequitable consequences ensued. There is no allegation, for example, of trickery or deception by JA as to the entity with which Continental was doing business. To the contrary, the undisputed evidence is that Continental knew the difference between JA and JJA, had separate business relationships with each of them, and required each of them to sign separate agreements, reflecting their respective functions and relationships with Continental. (Doc. 17, Exh. E, at ¶¶ 2, 5.) Continental has not alleged, and apparently cannot allege in good faith, that it was fooled or misled into thinking that JA would perform all installation services related to the Agreement when in fact it intended to have JJA perform some of those services, all as a scheme to dodge JA's indemnity obligations specified in the Agreement. After all, that Agreement on its face was not focused on installation of products, but instead contemplated a distribution arrangement. The Agreement's recitals confirm that "[JA] desires to engage in the business of selling certain new and rebuilt [Continental] piston aircraft engine series and replacement parts." (Doc. 3, Exh. B, at 3.)[11]

---

[10]    *See also Shelton v. Clements*, 834 So.2d 775, 781 (Ala.Civ.App. 2002) ("[A] party seeking to pierce the corporate veil must show fraud in asserting the corporate existence or must show that recognition of the corporate existence will result in injustice or inequitable consequences.") (citations omitted); *Gilbert*, 812 So.2d at 1274 (to pierce corporate veil on alter ego / instrumentality theory, plaintiff must show "complete control and domination," that individual or entity "misused that control," and that "misuse of that control was the proximate cause of harm or unjust loss" to the plaintiff); *South Alabama Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp.2d 1252, 1258 (M.D. Ala. 2004) ("Even when the corporation appears to be an alter ego, in order to pierce the corporate veil, there must be the added elements of misuse of control and harm or loss resulting from it.") (citations and internal marks omitted).

[11]    This language is important, because it confirms that Continental understood from the outset that JA would be distributing parts purchased from Continental to other entities and
(Continued)

Simply put, there is no reason to think that JA engaged in an elaborate subterfuge by misusing its control and dominion to have JJA install a magneto that Continental reasonably expected JA to install, all to the unjust or unfair detriment of Continental's indemnity rights under the Agreement.[12]

More fundamentally, the record establishes (with no contrary showing by Continental) that the magneto that was the centerpiece of the *Crouch* Action was ordered and paid for by JA, not by JJA or Mr. Jewell.  (Doc. 17, Exh. E, at ¶¶ 3-4 & Exh. 1.)[13]  JA purchasing a magneto under the Agreement cannot rationally be viewed as a misuse of control by JA, which misuse

_____

facilities for installation.  As such, Continental could not reasonably have understood that JA would be installing all of the Continental parts it purchased itself, or that the Agreement's indemnity protections would extend to installation of every single product JA purchased. Nothing about this fact pattern suggests that Continental was hoodwinked through JA's misuse of the corporate form into believing that it was receiving contractual indemnity protection that it actually was not receiving.  Continental understood JA to be a distributor, so it could not plausibly have believed it was receiving indemnity protection for the installation of every single product it sold to JA under the Agreement.  From an equity/fairness standpoint, Continental was no worse off from JA's dealings with JJA on the magneto than it would have been if JA had sold the magneto to an unrelated entity for installation in Crouch's aircraft.  That said, as discussed *infra*, nothing about the Agreement would preclude JA from owing an indemnity obligation to Continental for any parts that it (or its officers, representatives or agents) ultimately installed.

[12]    At best, Continental's theory may be that JJA received a parts discount reserved for JA under the Agreement because of JA's misuse of control.  But this case has nothing to do with parts discounts.  More to the point, the harm driving this lawsuit is Continental's protection or lack of protection under the indemnity clause, not the purchase price of the magneto.

[13]    In response, Continental counters that JJA and Mr. Jewell actually purchased the magneto, not JA.  (Doc. 10, at 22.)  Review of plaintiff's string of record citations on page 22 of its brief concerning this proposition, however, does not support it.  To the contrary, the record shows that Continental invoiced JA for the magneto, and that JA cut a check for it.  And even if plaintiff's version of the facts were accurate, they would show that JA was purchasing parts from Continental and then distributing them to JJA and Mr. Jewell, not that JA had no involvement in the transaction.  Again, the Court cannot discern what was fraudulent, inequitable or an abuse of control in this arrangement, particularly as it relates to Continental's rights under the indemnity clause.  Continental has not made or developed such an argument, and this Court cannot and will not do so on a litigant's behalf.  *See Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by the parties"); *Merritt*, 2010 WL 5474161, at *4 ("If Merritt wishes to pursue such a legal theory, it is incumbent on him to perform the necessary research and develop that argument ….").

proximately caused losses to Continental, as needed to activate alter-ego liability.  As such, there is no indication of any kind of sleight of hand, fraud or inequitable conduct by the Jewell Defendants that might warrant the extraordinary and rare measure of piercing the corporate veil to hold JJA and Mr. Jewell contractually bound by JA's consent to personal jurisdiction in a Product Support Agreement that they never executed.[14]

### 3.   *Minimum Contacts Theory of Personal Jurisdiction.*

In the alternative, Continental contends that personal jurisdiction may properly be exercised over JJA and Mr. Jewell in Alabama under a traditional "minimum contacts" analysis.[15]

---

[14]   Continental places heavy weight on the Alabama decision of *Kwick Set Components, Inc. v. Davidson Industries, Inc.*, 411 So.2d 134 (Ala. 1982), going so far as to proclaim that "[t]he instant facts are virtually identical to those in *Kwick Set*."  (Doc. 10, at 22.) Inspection of that decision reveals otherwise.  A critical component of the *Kwick Set* analysis was the presence of an "apparent scheme here of the dominant corporation to avoid payment of the subservient corporation's debts while benefiting from the use of the goods causing that debt," thereby leaving the supplier/plaintiff holding the bag.  411 So.2d at 137.  Specifically, *Kwick Set* involved allegations that the dominant corporation had purchased goods through the name of a defunct subservient corporation that it controlled, used those goods for its own benefit, and then refused to pay the ensuing invoices sent to the subservient corporation.  Thus, *Kwick Set* involved an obvious, glaring misuse of control by the dominant corporation, resulting in clear harm to the plaintiff, which was shipping goods for the dominant corporation's benefit but not getting paid because the dominant corporation hid behind the defunct subservient one.  That is not our situation at all.  Here, JA ordered the magneto for Crouch's benefit and paid Continental for the magneto.  That it may have subsequently distributed the magneto to JJA or Mr. Jewell for installation on Crouch's aircraft simply does not evince the sort of misuse of control (or harm to Continental) that might justify the extreme, rare, and disfavored step of piercing the corporate veil to hold JJA and Mr. Jewell to contractual personal jurisdiction concessions they never made.

[15]   For purposes of the personal jurisdiction analysis, the Court recognizes and adheres to the burden-shifting framework adopted by the Eleventh Circuit.  Thus, Continental "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted).  "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."  *Id.* (citations and internal quotation marks omitted).  "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.* (citation omitted).  "It goes without saying that, where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that (Continued)

-10-

Absent contractual acquiescence to personal jurisdiction, "[w]hen a defendant challenges personal jurisdiction, the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum state's long-arm provision and (2) the requirements of the due-process clause of the Fourteenth Amendment to the United States Constitution." *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp.2d 1056, 1060 (S.D. Ala. 2007) (citations omitted); *see also Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11ᵗʰ Cir. 2005) (similar). In Alabama, this inquiry collapses into a single question because Alabama's long-arm statute permits its courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause. *See Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 925 (11ᵗʰ Cir. 2007) ("the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible"); *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) ("Alabama's long-arm statute permits service of process as broad as the permissible limits of due process.") (citation and internal quotation marks omitted). Accordingly, the operative query is whether the exercise of personal jurisdiction over defendants JJA and Mr. Jewell in Alabama comports with constitutional safeguards.

Due process authorizes the exercise of personal jurisdiction when "(1) the nonresident defendant has purposefully established minimum contacts with the forum" and "(2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11ᵗʰ Cir. 1997); *see also Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11ᵗʰ Cir. 2010) (similar). The minimum contacts analysis varies depending on whether the type of jurisdiction asserted is general or specific. In that regard, facts supporting personal jurisdiction "may be general, which arise from the party's contacts with the forum state that are unrelated to the claim, or specific, which arise from the party's contacts with the forum state that are related to the claim." *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 747 (11ᵗʰ Cir. 2002). Continental invokes both specific and general jurisdiction with respect to these defendants.

---

personal jurisdiction is present." *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11ᵗʰ Cir. 2009).

"Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (citation and internal quotation marks omitted). Specific jurisdiction is properly found where (i) the defendant's contacts with the forum state are related or give rise to the plaintiff's cause of action, (ii) the contacts involve some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum, and (iii) the defendant's contacts with the forum are such that he should reasonably anticipate being haled into court there. *See, e.g., Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220-21 (11th Cir. 2009); *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005). The only contact identified by Continental in support of a "specific jurisdiction" analysis is that "John Jewell and JJA purchased the subject Magneto pursuant to a contact with the State of Alabama – the March 17, 2005 Magneto order." (Doc. 10, at 26.)

Plaintiff's efforts to hinge specific jurisdiction on that allegation are unavailing. As a threshold matter, once again, the record citations provided by Continental do not establish that JJA or Mr. Jewell ordered the subject magneto, whereas the record unambiguously confirms that Continental invoiced JA (not the other defendants) for that item and that JA (not the other defendants) paid for it. Thus, this "contact" with Alabama by JJA and Mr. Jewell appears to be nothing more than a mirage, because it was actually an Alabama contact by JA. Of course, "we may not ascribe the forum contacts of one co-defendant to another in determining the existence of personal jurisdiction." *Fraser v. Smith*, 594 F.3d 842, 852 (11th Cir. 2010).

More importantly, even if plaintiff had come forward with an adequate showing that JJA and Mr. Jewell were actually the ones to order the magneto, plaintiff has failed to show that its indemnity causes of action against JJA and Mr. Jewell arise from their purchase of a magneto from Continental in Alabama. To the contrary, the purchase of the magneto is merely a background fact that does not inform any of Continental's claims asserted herein. In plain English, Continental is not suing JJA and Mr. Jewell because it thinks they ordered a magneto from it in Alabama; rather, Continental is suing JJA and Mr. Jewell because it thinks they

installed the magneto in Mississippi for a Kentucky customer in a manner that gives rise to an indemnity obligation as a matter of contract or common law.[16]

The "relatedness" element of specific jurisdiction defies encapsulation in a rigid test, but "must hew closely to the foreseeability and fundamental fairness principles forming the foundation upon which the specific jurisdiction doctrine rests." *Oldfield*, 558 F.3d at 1224 (opining that "but-for" causation is not sufficient). In that regard, "our inquiry must focus on the direct causal relationship among the defendant, the forum, and the litigation." *Id.* at 1223 (citation and internal quotation marks omitted); *see also Diamond Crystal*, 593 F.3d at 1267 (for purposes of specific jurisdiction analysis, plaintiff must show that defendant purposefully established contacts in forum state and that there is "a sufficient nexus between those contacts and the litigation"). A defendant's mere act of ordering a part from a supplier in Alabama would neither make it foreseeable or fundamentally fair for that defendant to be haled into court in Alabama by that supplier based on allegations that the defendant did not install the part correctly in Mississippi for a Kentucky-based aircraft. *See generally Fraser*, 594 F.3d at 851 (although

---

[16]     It may be useful to contrast the circumstances of this case with one in which the purchase of a magneto from Continental in Alabama would support specific jurisdiction. Suppose Continental's claims against JJA and Mr. Jewell sounded in fraud, on the theory that they had misrepresented themselves as being JA when they ordered the magneto. In that event, their purported act of ordering the magneto from Continental in Alabama would indeed create a basis for the exercise of specific personal jurisdiction over them in this forum. But that is not what Continental is alleging. The alleged wrongful conduct giving rise to Continental's claims against these defendants is their installation of the magneto, which happened in Mississippi, not the ordering of the magneto in Alabama. The basis of the *Crouch* Action's negligent installation claim was not that JJA or Mr. Jewell were parties to the Product Support Agreement with Continental (they weren't), but that the Jewell Defendants had negligently installed the magneto and were acting as Continental's agent. Again, that installation happened in Mississippi, and therefore cannot support exercise of specific personal jurisdiction over JJA and Mr. Jewell in this forum. Another way to frame this conclusion is as follows: Without question, the *Crouch* Action plaintiffs could not have sued JJA and Mr. Jewell in Alabama on a specific jurisdiction theory for their alleged negligent installation of the magneto in Mississippi for a Kentucky-based aircraft. That being the case, how can Continental sue JJA and Mr. Jewell in Alabama on a specific jurisdiction theory to recover its attorney's fees expended in the *Crouch* Action, where there is no contract or consent to personal jurisdiction as to those two defendants? Plaintiff has not satisfactorily answered this question. All JJA and Mr. Jewell did was install a magneto (purchased by JA from Continental) in Mississippi. Their liability, if any, to Continental arises from their actions in Mississippi, not any meager contacts they may have had with Alabama. That fact is antithetical to a finding of specific personal jurisdiction.

non-resident defendant's purchase of goods in forum state "might support the exercise of specific jurisdiction over [that defendant] on contractual claims arising directly from that transaction," it does not render the defendant amenable to suit in that state for claims that "have only an attenuated causal connection to the purchase itself"); *Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.,* 786 F.2d 1055, 1059 (11th Cir. 1986) (holding that "a mere one-time purchaser of goods from a seller in the forum state cannot be constitutionally subject to the exercise of [specific] personal jurisdiction by the courts of the forum state" on a contractual claim).  That is to say, these defendants could not have had fair warning that they were subject to suit in Alabama based on their installation of a part on an aircraft in Mississippi, merely because of their attenuated (at best) contact with Alabama in ordering the subject part from a vendor in that state.

Given the extremely limited (and perhaps even nonexistent) nature of JJA and Mr. Jewell's contacts with Alabama related or giving rise to this indemnity litigation, the Court finds that personal jurisdiction may not properly be exercised over these defendants in this matter on a theory of specific jurisdiction.  A mere one-time order of a magneto from Continental in Alabama would not have caused JJA and Mr. Jewell reasonably to anticipate they could be sued in Alabama for alleged indemnity obligations arising from their installation of the magneto in Mississippi, particularly where the subject aircraft was flown to Kentucky after the Jewell Defendants completed their work, without ever passing through Alabama.  (Doc. 3, Exh. 3, at ¶ 11.)[17]  Under the circumstances, exercise of specific jurisdiction over these defendants would not comport with fundamental fairness principles.

Plaintiff's invocation of general personal jurisdiction principles fares no better.  "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state."  *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002) (citations omitted); *see also HomeBingo Network, Inc.*

---

[17]      *See generally Pease v. Kelly Aerospace, Inc.*, 2008 WL 2516454, *5 (M.D. Ala. June 20, 2008) (no specific jurisdiction against defendant that allegedly performed faulty work on a product manufactured in Alabama, where the alleged faulty work that formed the basis of plaintiffs' claims was performed in California, thousands of miles from the Alabama border, and defendant did not ship the product to Alabama after completing work).

*v. Chayevsky*, 428 F. Supp.2d 1232, 1241 (S.D. Ala. 2006) ("General personal jurisdiction arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts.").

According to Continental, general personal jurisdiction may properly be exercised over JJA and Mr. Jewell because they have customers in Alabama with whom they did $35,000 to $62,0000 in business per year between 2004 and 2006, because they systematically purchased products from Continental, and because they advertised in three national publications and a website.  (Doc. 10, at 28.)[18]  Remarkably, plaintiff's 45-page brief cites not a single authority deeming these types of contacts sufficient to satisfy the stringent test for general jurisdiction. Ample case law shows otherwise.  For starters, the mere existence of occasional sales to customers in the forum state is not enough to establish general personal jurisdiction, at least not without a showing of substantiality that has not been made here.  *See, e.g., Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (11th Cir. 1999) (opining that defendant's nine sales to the forum state are constitutionally insufficient to give rise to general jurisdiction, and recognizing that "[g]eneral jurisdiction has been found lacking even where a company … regularly solicited business and derived more than 26% of its income from the forum"); *Northern Ins. Co. of New York v. Construction Navale Bordeaux*, 2011 WL 2682950, *5 (S.D. Fla. July 11, 2011) (no general jurisdiction even though defendant had made 20 sales in forum state, had appeared at two trade shows in forum state per year, and had done industry advertising in the forum state).[19]

---

[18]     Other than the raw dollar amount, Continental provides no information concerning the frequency or numerosity of those sales in the forum state.  In that regard, the record shows that JJA deals or dealt in expensive aircraft services.  Furthermore, the exhibits on which Continental purports to rely for the cited dollar amounts are simply aggregated lists of customers and sales figures.  Plaintiff has not provided any breakdown or summary chart of the information on which it relies, just the (largely unhelpful) raw data.  By all appearances, the cited sales to customers in Alabama could amount to no more than a handful of sales per year.  This hardly appears substantial, especially when compared to JJA's apparent total sales in the millions of dollars.  (Doc. 10, Exh. G, at 27.)

[19]     In that regard, Continental relies on the fact that JJA sold $43,000 in goods and services to Alabama customers in the 2003-2004 period.  (Doc. 10, at 28.)  Even assuming the accuracy of that figure, plaintiff's own exhibits show total JJA sales of $933,000 for that period. (Doc. 11, Exh. 4.)  That 4.6% of JJA's gross sales were to Alabama customers is not a tenable basis for asserting general personal jurisdiction over it.

Similarly, the fact that JJA purchased materials from Continental in Alabama on an ongoing basis is woefully inadequate to satisfy the strict general jurisdiction test.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, --- U.S. ----, 131 S.Ct. 2846, 2857, 180 L.Ed.2d 796 (2011) ("mere purchases made in the forum State, even if occurring at regular intervals, are not enough to warrant a State's assertion of general jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions") (internal marks omitted); *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000) ("[M]erely purchasing materials, even if done regularly, is not contact sufficient to support personal jurisdiction.").

And the existence of a general informational website and sporadic national advertisements accessible to (but not directly targeted at) residents of the forum state is similarly insufficient to support a finding of general jurisdiction.  *See Fraser*, 594 F.3d at 847 ("the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum") (citations omitted); *Sherritt*, 216 F.3d at 1292 ("Placing advertisements in a newspaper is not a sufficient connection to the forum for in personam jurisdiction."); *Charlie Fowler Evangelistic Ass'n, Inc. v. Cessna Aircraft Co.*, 911 F.2d 1564, 1566 (11th Cir. 1990) (defendant's basic listings in *The Aviation Telephone Directory* were not "purposely directed" activities at Florida residents, and even if they were advertisements, "they are not enough, without more, to provide contacts which comport with due process"); *Matthews*, 469 F. Supp.2d at 1064 ("A purely passive informational website such as that operated by D & M lacks jurisdictional significance.").

Thus, each of these items taken in isolation is insufficient to constitute the kind of substantial contacts to the forum to trigger general personal jurisdiction over JJA.  Nor is there any reason (much less legal argument or authority presented by plaintiff) to think that consideration of these contacts in the aggregate would alter the constitutional due-process analysis in any meaningful way.  This is particularly true when the contacts on which Continental relies are juxtaposed against JJA's uncontroverted factual showing that JJA "has never had either an agent or employee in Alabama," "has never provided services in Alabama," "has never attempted to qualify to do business in Alabama," and "has never maintained offices in Alabama."  (Doc. 3, Exh. C, at ¶ 7.)  These facts, taken in tandem with Continental's relatively

-16-

slender showing of sales, purchases, and advertisements, establish that plaintiff has not met its stringent burden of showing the kinds of continuous and systematic contacts necessary for the exercise of general personal jurisdiction over JJA by this District Court.

As for defendant Mr. Jewell, Continental simply lumps him in with JJA for purposes of the minimum contacts analysis, with no discussion or recitation of his contacts with the forum state.  (Doc. 10, at 26-28.)  This approach is improper.  Pursuant to the fiduciary shield doctrine embraced by Alabama courts, "jurisdiction over individual officers and employees of a corporation may not be predicated on the court's jurisdiction over the corporation itself," but instead "there must be a showing that the individual officers engaged in some activity that would subject them to the state's long-arm statute before *in personam* jurisdiction can attach."  *Ex parte Kohlberg Kravis Roberts & Co.*, 78 So.3d 959, 974 (Ala. 2011) (citations omitted); *see also South Alabama Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp.2d 1252, 1260 (M.D. Ala. 2004) ("An officer who has never been in Alabama, nor conducted personal business in the state through an alter ego or through personal agents, may not be subjected to jurisdiction in Alabama."); *U.S. Pharmaceutical Corp. v. Breckenridge Pharmaceutical, Inc.*, 2010 WL 3731112, *4 (N.D. Ga. Sept. 16, 2010) ("To exercise personal jurisdiction over a corporation's officer acting in his official capacity, the officer's personal conduct must establish minimum contacts with the forum state.").[20]

More broadly, the U.S. Supreme Court has explained that "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him .... Each defendant's contacts with the forum State must be assessed individually."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).  This kind of defendant-specific contacts analysis has not been performed by Continental here.  In particular, plaintiff has made no showing that Mr. Jewell's personal conduct would amount to the kind of continuous and systematic contacts with Alabama to subject him to personal jurisdiction

---

[20]      The Court is aware, of course, that Alabama's fiduciary shield doctrine is not an absolute rule, but is subject to certain nuances and exceptions, such as where individual defendants "allegedly engaged in tortious activity directed toward the State of Alabama."  *Kohlberg*, 78 So.3d at 977.  But Continental has presented neither argument nor authority for any of those exceptions here, and indeed seems to have treated the entire personal jurisdiction query as to Mr. Jewell as a mere afterthought.  This is not sufficient to satisfy its burden.

in this state; instead, plaintiff would simply wave its hand and suggest in the vaguest of terms that since there is personal jurisdiction over JJA (which there is not), there must be personal jurisdiction over Mr. Jewell too.[21]

Inasmuch as plaintiff has not met its burden of demonstrating that the exercise of personal jurisdiction over JJA and Mr. Jewell in Alabama would be constitutionally permissible, the Court will dismiss plaintiff's claims against both of these defendants for want of jurisdiction.

### B.     Whether Dismissal or Transfer to Another Forum is Appropriate.

Next, JA (now the only remaining defendant) urges the Court either to dismiss this action pursuant to the doctrine of *forum non conveniens* or to transfer it to the U.S. District Court for the Northern District of Mississippi pursuant to 28 U.S.C. § 1441.[22]

As an initial matter, the notion that dismissal of this case is warranted on a *forum non conveniens* theory because JA believes it would have been preferable for Continental to sue it in Mississippi is a fundamental misapplication of that doctrine.  Abundant case law makes clear

---

[21]     At best, in the fact section of its brief, Continental alleges that Mr. Jewell had certain professional contacts with Alabama in his official capacity with JJA and/or JA, and that he "attended at least one TCM seminar in Fairhope, Alabama." (Doc. 10, at 15-18 & n.7.) Such a showing falls well short of the continuous and systematic personal contacts necessary to exercise general personal jurisdiction over him.  This is particularly true when plaintiff's threadbare facts concerning Mr. Jewell's contacts with Alabama are considered alongside unrebutted evidence that Mr. Jewell resides in Mississippi, has never maintained an address or telephone in Alabama, has never provided services or maintained offices in Alabama, has never had an Alabama bank account, and has never owned or leased property in Alabama.  (Doc. 3, Exh. C, at ¶ 12.)  The facts and plaintiff's factual allegations simply do not support the exercise of general personal jurisdiction over Mr. Jewell in this forum.

[22]     JA intermittently characterizes its venue argument as asserting that "venue is improper in Alabama." (Doc. 17, at 18.)  This label jumbles two separate issues.  The first, whether venue is proper, is governed by 28 U.S.C. § 1391, and cannot seriously be challenged here.  After all, JA signed the Agreement, expressly consenting to venue in Alabama.  Under the circumstances, it could not plausibly be argued by JA that venue is improper in Alabama.  The second doctrine, *forum non conveniens* or a § 1404(a) transfer, applies where venue is proper in the plaintiff's selected forum, but where another forum might be more convenient for the parties and the court.  *See generally Ford v. Brown*, 319 F.3d 1302, 1306-07 (11th Cir. 2003) (explaining that *forum non conveniens* doctrine "authorizes a trial court to decline to exercise its jurisdiction, even though the court has venue, where it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum") (citation omitted).  Defendants' argument focuses on the convenience of the forum, not the propriety of venue, and therefore will not be examined through the § 1391 lens.

that *forum non conveniens* neither contemplates nor authorizes dismissal when a § 1404(a) transfer to another domestic forum is available.[23]

The remaining question, then, is whether transfer is appropriate under § 1404(a). That statute provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "District courts have broad discretion in deciding whether to transfer an action to a more convenient forum." *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp.2d 1290, 1307 (N.D. Ala. 2003) (citation omitted); *see also England v. ITT Thompson Industries, Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988). "[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

JA's attempt to shift the venue of this action from this District to the Northern District of Mississippi is unpersuasive for a host of reasons. First, it is well-settled the plaintiff's choice of forum (in this case, Continental's decision to file suit in a state court found in the Southern District of Alabama) is entitled to substantial weight and will not lightly be cast aside. *See, e.g., Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."); *Bartronics, Inc. v. Power-One, Inc.*, 510 F. Supp.2d 634, 637 (S.D. Ala. 2007) ("a plaintiff's

---

[23]   *See, e.g., Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) ("to the extent we have continued to recognize that federal courts have the power to dismiss damages actions under the common-law *forum non conveniens* doctrine, we have done so only in cases where the alternative forum is abroad") (citations and internal quotation marks omitted); *Bacon v. Liberty Mut. Ins. Co.*, 575 F.3d 781, 783 (8th Cir. 2009) ("To the extent that there is an alternative federal forum, the district court lacked the power of dismissal because with its enactment in 1948, § 1404(a) superseded the common law doctrine of *forum non conveniens* insofar as transfer to another federal district court is possible.") (citation and internal marks omitted); *In re Compania Naviera Joanna S.A.*, 531 F. Supp.2d 680, 684 (D.S.C. 2007) ("Under the common law doctrine of *forum non conveniens*, a district court will dismiss an action only if transfer to the proper alternative forum cannot be accomplished via 28 U.S.C. §1404," such as "when the more convenient, alternative forum is in another country"); *Faurecia Exhaust Systems, Inc. v. Walker*, 464 F. Supp.2d 700, 709 (N.D. Ohio 2006) ("Since the enactment of the federal transfer statute, 28 U.S.C. § 1404(a), the doctrine of *forum non conveniens* has continuing application only where the alternative forum is outside of the United States.").

choice of forum should be honored so long as venue is proper there, unless substantial countervailing considerations militate to the contrary").

Second, that deference is magnified where, as here, the parties agreed to a forum-selection clause (the validity and enforceability of which as JA has not been challenged) fixing venue in this forum.[24]  *See, e.g., P & S Business Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (recognizing choice of forum clause as "a *significant* factor that figures *centrally* in the district court's calculus" for a § 1404(a) motion) (citation omitted); *Ricoh*, 870 F.2d at 573 ("the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors"); *ASD Specialty Healthcare, Inc. v. Letzer*, 2010 WL 2952573, *3 (M.D. Ala. July 26, 2010) ("while a valid forum selection clause i[s] not dispositive of a § 1404(a) motion to transfer venue, the movant carries a considerably heavier burden in seeking transfer outside of the district mandated by such a clause") (footnote omitted); *E & H Steel Contracting, Inc. v. Turner Constr. Co.*, 2006 WL 1731153, *3 (M.D. Ala. June 23, 2006) (explaining that the burden is on "the party opposing the enforcement of the forum selection clause … to show that the contractual forum is sufficiently inconvenient" that it should not be honored) (citation and internal quotation marks omitted).  JA contractually agreed to litigate any disputes with Continental brought under or relating to the Agreement (whose indemnity clause Continental seeks to enforce in this action) in Alabama.  Now JA asks this Court to transfer the action to Mississippi, but it makes neither argument nor evidentiary showing that the forum selection clause is unenforceable or should not be honored.  Under the circumstances, the Court declines JA's invitation to "encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system."  *Ricoh*, 870 F.2d at 573.

Third, even under a traditional § 1404(a) balancing test, JA has failed to establish that the proposed new forum is more convenient than Continental's selected forum.  In this analysis, once it is established that the action could originally have been brought in the proposed transferee forum (which it could have been, inasmuch as JA resides there and a substantial part of the events giving rise to the claim occurred there), courts examine "whether a balancing of the

---

[24]      Recall that the Agreement executed by JA and Continental (and containing the indemnity clause that Continental seeks to enforce herein) specifies that "[e]ach party further agrees that any action … brought under or relating to this Agreement or to the dealings between the parties will be brought and conducted only in Alabama."  (Doc. 3, Exh. B, at ¶ 36.)

convenience of the parties and the interest of justice favors transfer in the specific case." *Baker v. RBS Worldpay, Inc.*, 2010 WL 4065074, *2 (S.D. Ala. Oct. 15, 2010). In performing such analysis, relevant factors include "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

As to witnesses, it is not at all clear that Alabama is an inconvenient forum, given that (i) certain witnesses are already in this district, and (ii) others are located nearby in an adjacent state.[25] As to convenience of parties, to the extent that JA would prefer to litigate in its home state, surely there will be some inconvenience attendant to defending itself in Alabama; however, as the Eleventh Circuit has recognized, "modern methods of transportation and communication have lessened the burden of defending a suit in a foreign jurisdiction." *Mutual Service Ins. Co. v. Frit Industries, Inc.*, 358 F.3d 1312, 1320 (11th Cir. 2004). This is particularly true where, as here, JA is based in a neighboring state to the forum, such that vast geographic distances (and the associated inconveniences and expenses of same) are not in play here. As to other factors, Continental has stated (without opposition from JA) that all or most of the relevant documents are already found in this judicial district, that this Court will be more familiar with the governing Alabama law to which the parties agreed than a Mississippi court would be, that the forum-selection clause fixes an Alabama forum, and that JA has consented to an Alabama forum.

---

[25] JA diminishes its own convenience argument by acknowledging that Continental's "case should not be witness intensive." (Doc. 3, at 13.) Indeed, it appears that most of the witnesses will be Continental employees or attorneys (testifying about the indemnity agreement and the fees accrued), on the one hand, and JA employees or representatives, on the other. Continental is based in Alabama, JA in Mississippi. To transfer venue to Mississippi would thus not unambiguously be more convenient for all, but would merely shift the inconvenience from JA to Continental. This is not a viable reason for a § 1404(a) transfer. *See Baker*, 2010 WL 4065074, at *4 ("where a transfer merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain") (citation omitted).

After careful consideration, the Court concludes that JA has not met its heavy burden under § 1404(a) of showing that the desired transferee forum is so much more convenient than Alabama that it should override both the forum-selection clause to which it agreed and plaintiff's choice of forum.  In fact, the Court is far from convinced that the Southern District of Alabama is, on balance, any less convenient as a forum for trial than the Northern District of Mississippi would be, even without the significant considerations of the forum-selection clause and plaintiff's choice of forum in accordance with that clause.  Accordingly, defendant's request for dismissal or transfer of venue on a convenience theory is **denied**.

###    C.    *Whether the Complaint States a Claim against JA.*

Defendant JA also seeks dismissal of the Complaint under Rule 12(b)(6), arguing that (i) JA owed no duty under the Agreement to indemnify Continental for the actions of another company, and (ii) Alabama law does not allow for recovery of attorney's fees in these circumstances.  The Court will address each of these arguments in turn.[26]

----

[26]    Defendant's Motion to Dismiss is silent as to Count III of the Complaint, which is common-law indemnity cause of action asserted under Kentucky law.  According to the well-pleaded allegations of the Complaint, JA participated in the attachment of the magneto to the Crouch/Hudson aircraft in the spring of 2005.  (Doc. 3, Exh. A, at ¶ 18 ("The AVCO Engine … was overhauled in March and April 2005 … by Defendants Jewell Aircraft, Inc., John Jewell Aircraft, Inc., [and] John Jewell.").)  And Count III alleges that, under Kentucky law, JA and the other defendants had a duty to use correct and up-to-date parts in securing the magneto to that engine, then "breached this duty … by, among other things, negligently attaching the Magneto to the AVCO Engine accessory case."  (*Id.*, ¶ 59.)  Thus, Continental maintains in Count III that JA owes it a Kentucky common-law duty of indemnification because Continental was "exposed to liability" in the *Crouch* Action through JA's negligent acts.  Again, the Motion to Dismiss does not address whether Count III states a claim.  For that reason, the Court will not embark *sua sponte* on a Rule 12(b)(6) analysis of that claim at this time.  Nor do movants ameliorate this omission via a single-paragraph afterthought in their reply, wherein they state that "[i]n the absence of citations of law or of specific predicate facts, [Continental] has truly stated a claim for which no relief can be granted.  This Court can ignore [Continental]'s references to Kentucky law."  (Doc. 17, at 20.)  This is a new, previously available argument which a movant cannot properly raise for the first time in a reply brief.  *See, e.g., Essex Ins. Co. v. Foley*, 827 F. Supp.2d 1326, 1330 (S.D. Ala. 2011) ("Essex's election not to advance in its principal brief readily available [legal] arguments … precludes it from propounding those contentions in its Reply."); *Sharpe v. Global Sec. Int'l*, 766 F. Supp.2d 1272, 1294 n.26 (S.D. Ala. 2011) ("Because it is improper for defendant to raise this new argument in its reply brief, that argument will not be considered.").  Besides, as the movant in a Rule 12(b)(6) motion, JA bears the burden of explaining why Count III is legally deficient, with citations to authority as appropriate.  In lieu of doing so, JA has merely provided a conclusory reassurance that it thinks "[t]his Court can (Continued)

According to JA, a "plain reading" of the indemnity clause in the Agreement "provides that JA may only be required to indemnify [Continental] for its actions, not for the actions of another company, such as JJA." (Doc. 3, at 16.) This detail is significant, says JA, because JJA and not JA actually installed the magneto on the aircraft. But this argument fails at the Rule 12(b)(6) stage for at least three reasons. First, far from merely seeking to hold JA liable for the wrongful conduct of someone else, the Complaint alleges that JA participated in the engine overhaul and magneto installation that led to the *Crouch* Action against Continental. (Doc. 3, Exh. A, at ¶¶ 18, 21.) JA's disagreement with the factual accuracy of that allegation is not a cognizable legal basis for Rule 12(b)(6) relief. *See, e.g., Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (on a Rule 12(b)(6) motion, "[w]e take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs"); *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1232 n.10 (11th Cir. 2010) ("In reviewing a complaint, we accept all well-pleaded factual allegations as true and construe the facts in the light most favorable to the plaintiff.") (citation omitted).

Second, JA overlooks express language in the indemnity provision wherein JA agreed to indemnify Continental for claims that "have resulted from or arisen out of any act or omission of [JA], its officers, agents, representatives, servants or employees." (Doc. 3, Exh. A, at ¶ 26.) If JJA or John Jewell was acting as JA's "agent" or "representative" in that installation process, then JA is or may be contractually obligated to indemnify Continental for claims arising from

ignore" the claim without a more detailed exposition of Kentucky law by Continental. Such an argument disregards JA's burden as a 12(b)(6) movant, and improperly would impose on plaintiff a duty preemptively to provide a comprehensive legal discourse on the viability of a claim that the defendant never even challenged in its Motion to Dismiss. The Court will not turn the applicable burden on its head, as is implicit in JA's suggestion. *See, e.g., Gulf Offshore Logistics, LLC v. Bender*, 2010 WL 500448, *2 (S.D.Ala. Feb. 9, 2010) ("Because the defendant presented a Rule 12(b)(6) motion ..., he at all times bore the burden of demonstrating entitlement to dismissal."); *Superior Energy Services, LLC v. Boconco, Inc.*, 2010 WL 1267173, *5 (S.D.Ala. Mar. 29, 2010) ("When attacking a complaint in a motion filed pursuant to Rule 12(b)(6), the moving party bears the burden to show that the complaint should be dismissed for failure to state a claim upon which relief may be granted."). If defendant contends that Count III does not state an actionable claim for relief under Kentucky law or otherwise, then it must state why, and not merely wait until its reply to criticize the plaintiff for not unilaterally presenting a legal brief supporting the viability of such a claim under Kentucky law in the absence of any prior challenge by movant.

same.  Thus, the plain language of the indemnity clause refutes JA's position that it never agreed to indemnify Continental for claims arising from the conduct of JJA or Mr. Jewell, but only promised to indemnify Continental for JA's own wrongful acts.  Moreover, a fair reading of the factual allegations of the Complaint is that Continental seeks to hold JA liable under the indemnity provision for the actions of JJA and/or Mr. Jewell as its agents or representatives, as well as for JA's own conduct.  Whether, as a factual matter, any such agency or representative relationship existed in this case is not amenable to disposition at the pleadings stage.

Third, and more generally, JA's advocacy of a crabbed, narrow reading of the Agreement's indemnity clause cannot be reconciled with the broad contractual language at issue. In its briefs, JA imputes all manner of narrowing principles to the indemnity language, such as (i) the indemnity clause does not apply because JA was not sued in the underlying proceedings; (ii) the *Crouch* Action plaintiffs did not assert that JA did anything wrong; (iii) the *Crouch* Action had nothing to do with the Agreement or JA's responsibilities under same; and (iv) the Agreement only provides for indemnity "for acts and omissions related to JA's actions as *distributor* under the Agreement."  (Doc. 3, at 15-16; doc. 17, at 9.)  Again, the indemnity clause to which JA agreed is quite broad.  It says that JA must indemnify Continental for all claims "to the extent that such claims, demands, obligations or liabilities have resulted from or arisen out of any act or omission of [JA], its officers, agents, representatives, servants, or employees."  It does not specify that the indemnity obligation attaches only if JA was also a party defendant in the underlying action, if the plaintiffs in the underlying action specifically alleged wrongdoing by JA (as opposed its agents, representatives, and so on), or if the underlying action was based on the distributor relationship between JA and Continental or JA's conduct in its capacity as distributor. The indemnity clause will be read in accordance with its plain language, and will not be rewritten now simply because JA wishes it were more tightly circumscribed and less open-ended than it is.

As a separate ground for seeking dismissal, JA also predicates its Rule 12(b)(6) motion on Alabama law of indemnity, more specifically those principles set forth in *Stone Bldg. Co. v. Star Elec. Contractors, Inc.*, 796 So.2d 1076 (Ala. 2000).  There appears to be no dispute that Alabama law applies to Counts I and II (the contractual indemnity claims); after all, the Agreement provides that it "shall be construed and governed according to the laws of the State of Alabama, United States of America."  (Doc. 3, Exh. B, at § 36.)  In *Stone*, the Alabama Supreme

Court reaffirmed the proposition that a contractual indemnification provision authorizes recovery of attorney's fees only where "one is defending claims predicated solely upon another defendant's negligence; however, where one is defending for his own benefit, an award of attorney fees will not be allowed." *Stone*, 796 So.2d at 1092 (citation omitted). In other words, "an indemnitee is precluded from recovering attorney fees where the indemnitee has been required to defend accusations which encompass his own separate wrongful acts." *Id.* (citation omitted).

What does that mean in the context of this case? JA takes the extreme position that *Stone* forbids indemnity on any of the underlying claims litigated in the *Crouch* Action. Continental occupies the opposite extreme, that *Stone* allows indemnity on all of these claims. Predictably, the truth lies somewhere in between. Recall that Continental defended itself in the *Crouch* Action on four triable claims. Three were based exclusively on Continental's alleged wrongdoing. (Doc. 3, Exh. A, at ¶ 44.)[27] The fourth was the negligent installation claim in which the *Crouch* Action plaintiffs sought to hold Continental liable for the alleged negligent installation of the magneto by the Jewell Defendants. Certainly, nothing about the Alabama rule in *Stone* would preclude Continental from seeking to recover attorney's fees pertaining to a negligent installation claim, which on its face was "predicated solely on [the indemnitor's] negligence," not that of Continental. Stated differently, the negligent installation claim (as the parties have explained it in their filings here) did not involve allegations that Continental had committed wrongful acts; rather, it sought to hold Continental liable solely for the alleged wrongdoing of the Jewell Defendants. *Stone* does not impede the ability of plaintiff's indemnification claim for attorney's fees to proceed under Alabama law, insofar as the negligent installation claim is concerned.[28]

---

[27] By Continental's admission, those claims sounded in "(1) negligence (regarding [Continental]'s alleged post-sale failure to warn …), (2) breach of warranty, and (3) strict liability." (*Id.*) The negligence claim alleged that Continental breached a duty to warn potential users that the magneto was unsafe. The breach of warranty claim alleged that Continental sold a magneto that was neither merchantable nor fit for its intended use. And the strict liability claim alleged that Continental's magneto was an unreasonably dangerous product.

[28] As to the negligent installation claim, JA's Rule 12(b)(6) argument is, evidently, that such claims "were not submitted to the jury." (Doc. 3, at 17.) Indeed, JA would impute some importance to the fact that the *Crouch* Action plaintiffs ultimately withdrew their claim (Continued)

That said, the three *Crouch* Action claims that did go to the jury fall squarely within the *Stone* prohibition on indemnification of attorney's fees accrued by an indemnitee in defending against claims based on his own alleged wrongdoing.  In a moment of candor, Continental effectively admits its overreach, stating that "it may eventually be determined that [Continental] is not entitled to recover the fees and expenses incurred solely in its defense of the claims exclusive to [Continental]."  (Doc. 10, at 44.)  But Continental hastens to add, via footnote, that it is making no such concession at this time.  Why not?  The rule set forth in *Stone* is not ambiguous, and its application to Continental's allegations in the Complaint is not a close question.  To support its position, Continental weakly suggests that "this determination is fact-specific and not proper for a Rule 12(b)(6) Motion."  (Doc. 10, at 37.)  But the Court is accepting the allegations of the Complaint as pleaded by Continental.  There are no factual determinations to be made in assessing whether the *Crouch* Action claims for negligence, breach of warranty, and strict liability were "accusations which encompass[ed] [Continental's] own separate wrongful acts," and were not "predicated solely on [JA's] negligence."  *Stone*, 796 So.2d at 1092.  Without question, those claims did indeed encompass Continental's own allegedly wrongful acts, and Continental was defending those claims for its own benefit.  Thus, *Stone* clearly forbids Continental from recovering its attorney's fees as to those claims.  Nor does Continental suggest that *Stone* is not good law or that it is distinguishable in any meaningful way.  Simply put, there is no reasonable basis for deeming the *Crouch* Action claims that reached a jury to be amenable to indemnification of attorney's fees under Alabama law.

---

against Continental for the Jewell Defendants' negligent installation of the magneto, and proceeded to judgment solely on claims of Continental's own wrongdoing.  (*Id.* at 15.)  But why does that matter?  Nothing in *Stone* or any other Alabama authority cited by JA would draw that kind of distinction.  Besides, Continental incurred substantial attorney's fees in defending against that vicarious liability cause of action before it was withdrawn very late in the underlying proceedings.  (Doc. 3, Exh. A, at ¶¶ 37-43.)  The mere fact that the *Crouch* Action plaintiffs did not litigate the vicarious liability claim through to jury verdict would not appear to negate Continental's ability to obtain indemnification from JA under the plain language of the Agreement for defense costs relating to that claim prior to its withdrawal.  To the extent that defendants' position is otherwise, they have not developed it in any meaningful way.  This Court will not do so on their behalf.  *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties.").

Accordingly, the Motion to Dismiss will be **granted** as to Counts I and II insofar as those claims seek recovery of defense costs pertaining to the negligence, breach of warranty and strict liability claims in the *Crouch* Action.[29]

To summarize this lengthy Rule 12(b)(6) analysis, the Court finds that Counts I and II state a claim against JA upon which relief can be granted insofar as plaintiff seeks indemnification of attorney's fees and other defense costs expended on the negligent installation cause of action in the *Crouch* Action.[30]   The Court further finds, however, that Counts I and II do

_____

[29]       In so ruling, the Court has considered Continental's conclusory suggestion that "if it is determined that but for the negligence of the Defendants there would have [*sic*] no accident and no claims against CMI [*sic*] first place, then Defendants should have to indemnify CMI for amounts that it would have otherwise not incurred."  (Doc. 10, at 44 n.19.)  Plaintiff does not elaborate on this argument, much less present any legal authority suggesting that Alabama courts have recognized or would recognize a "but/for causation" exception to the very clear rule in *Stone*.  Even if JA's wrongdoing was the but/for cause of the airplane crash that precipitated the *Crouch* Action, the fact remains that the negligence, breach of warranty, and strict liability claims that went to the jury involved "accusations which encompass [Continental's] own separate wrongful acts."  *Stone*, 796 So.2d at 1092.  As such, an award of attorney's fees to Continental on an indemnity claim against JA is plainly not permissible under the plain language of *Stone*.  The Court will not unilaterally read into *Stone* a sprawling "but/for causation" exception that would effectively eviscerate *Stone*, particularly in the absence of any citation or explanation by Continental why it would be proper under Alabama law to reduce *Stone* to functional insignificance in that manner.

[30]       In its reply brief, JA proffers a pair of additional arguments as to why the contractual indemnity claims relating to the negligent installation cause of action should be dismissed.  As indicated *supra*, presenting previously available new arguments in a reply brief is improper; therefore, these contentions will not be considered.  Even if they were examined on the merits, the result would not change.  JA's first new argument is to recite certain statements that Continental made in the *Crouch* Action, such as that it viewed the *Crouch* plaintiffs' claims as "meritless" and "frivolous," and that it vehemently disagreed that Mr. Jewell was acting as its agent during the magneto installation process.  (Doc. 17, at 5-8.)  But JA does not explain the legal significance of these statements, or why it believes they bear on the pending Motion to Dismiss in this action.  This Court will neither speculate as to what JA's point may have been nor "fill in the gaps" with legal doctrines that JA may or may not have intended to invoke.  JA's second new argument in its reply brief is that Continental "never made a demand for indemnification on JA, so [Continental] cannot recover anything."  (Doc. 17, at 8.)  This argument ignores the plain text of the Complaint, which alleges that Continental made just such a demand for indemnification on JA's counsel in April 2010, and that JA refused.  (Doc. 3, Exh. A, at ¶¶ 34-36.)  Perhaps JA does not believe that factual allegation in the Complaint is accurate.  But basic hornbook law teaches that a Rule 12(b)(6) motion is not the proper vehicle for a defendant to quarrel with well-pleaded factual allegations of a complaint.

not state a claim against JA under Alabama law insofar as plaintiff seeks indemnification of attorney's fees and other defense costs expended on the remaining causes of action in the *Crouch* Action that went to trial, as to all of which Continental was defending for its own benefit against allegations encompassing its own allegedly wrongful acts. [31]

## IV.   Conclusion.

For all of the following reasons, it is hereby **ordered** as follows:

1.   For cause shown, Plaintiff's Motion for Leave to File Exhibits Under Seal (doc. 11) is **granted**, and the exhibits appended thereto will be maintained **under seal** in the court file;

2.   The Motion to Dismiss (doc. 3) is **granted** as to defendants John Jewell Aircraft, Inc. and John Jewell, and the Complaint is **dismissed** against them for lack of personal jurisdiction;

3.   The Motion to Dismiss is further **granted** as to the portion of Counts I and II in which plaintiff seeks recovery of attorney's fees and other costs incurred in defense of the negligence, breach of warranty and strict liability claims in the underlying action, and those aspects of Counts I and II are **dismissed** for failure to state an actionable claim for contractual indemnity under Alabama law;

4.   The Motion to Dismiss is **denied** in all other respects as to all other claims;

5.   The Clerk of Court is **directed** to terminate John Jewell Aircraft, Inc. and John Jewell as parties defendant to this action;

6.   This action will proceed against defendant Jewell Aircraft, Inc. as to Count III in its entirety, and the portions of Counts I and II seeking indemnity of attorney's fees and defense costs incurred by plaintiff in defending against the negligent installation cause of action in the underlying case; and

7.   Jewell Aircraft, Inc. is **ordered** to file its answer to the Complaint on or before **August 10, 2012**.

---

[31]   Because this Order makes no determination of whether JA will or will not ultimately be found liable on the contractual indemnity claims, the Court leaves for another day the potentially thorny question of how to disentangle which attorney's fees were incurred in defending against the negligent installation claim (and are potentially recoverable herein) versus those incurred in defending against the other claims (which are not).

DONE and ORDERED this 30th day of July, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE