**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **CONTINENTAL MOTORS, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **CIVIL ACTION 12-0221-WS-C** |
| | ) |
| **JEWELL AIRCRAFT, INC.,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter comes before the Court on defendant Jewell Aircraft, Inc.'s Motion for Summary Judgment (doc. 91). The Motion has been extensively briefed and is now ripe for disposition.

**I.    Background.[1]**

The factual and procedural history of this litigation has been recounted at length in previous orders. At the risk of redundancy, the Court summarizes the relevant background facts and circumstances as follows: In November 2006, a small airplane crashed near Bardstown, Kentucky, seriously injuring its occupants. Approximately 18 months earlier, Jewell Aircraft, Inc. and/or other persons or entities had overhauled the aircraft's engine, during which process they had installed a magneto manufactured by Continental Motors, Inc.[2]

---

[1]    The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in its favor. Federal courts cannot weigh credibility at the summary judgment stage. *See, e.g., Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.") (citation and internal quotation marks omitted).

[2]    There appears to be some dispute as to whether Continental Motors, Inc. is or is not the same entity as Teledyne Continental Motors, Inc. (*i.e.*, whether the former is a successor in interest of the latter). That question has not been squarely presented for resolution on
(Continued)

The injured occupants of the aircraft filed a lawsuit (the "*Crouch* Action") against Continental in Kentucky in 2007. The *Crouch* plaintiffs attributed the crash to defects in the magneto's design, manufacture and/or installation. In February 2010, a federal court in Kentucky transferred the *Crouch* Action to this District Court, where it was styled *Larry Crouch, et al. v. Teledyne Continental Motors, Inc.*, Civil No. 10-0072-KD-N. (The *Crouch* plaintiffs' claims against Jewell Aircraft remained pending in federal court in Kentucky.) The *Crouch* Action culminated in a three-week trial in the summer of 2011, at the conclusion of which the jury found in Continental's favor and against the *Crouch* plaintiffs on all remaining claims and causes of action. Following the trial and verdict, Continental petitioned Judge DuBose for an award of more than $2 million in attorney's fees and costs of defense it had incurred in the *Crouch* Action. She denied the motion, reasoning that the *Crouch* plaintiffs had not conducted themselves in a manner that was "tantamount to bad faith" so as to trigger the narrow fee-shifting provisions of 28 U.S.C. § 1927. (Civil Action 10-0072, doc. 411, at 3.)[3]

Undeterred, Continental initiated separate fee litigation against Jewell Aircraft, Inc. and two other defendants in state court, seeking recovery of defense costs and attorney's fees incurred in the *Crouch* Action on a breach of contract theory. The factual underpinnings of this litigation lie in a certain Product Support Agreement (the "Agreement") entered into between Jewell Aircraft and Continental as of January 1, 2005. The Agreement's effect was to designate Jewell Aircraft as a "TCM Piston Aircraft Engine and Parts Distributor and Service Provider." (Doc. 92, Exh. A, ¶ 1.) Of critical importance to plaintiff's claims here is Paragraph 21 of the Agreement, which provides in relevant part as follows:

---

summary judgment; therefore, the Court will assume for purposes of this Order that the two entities are the same and will refer to them interchangeably as "Continental" herein. All references by the parties to "CMI" or "TCM" are likewise construed as meaning Continental.

[3]    On February 27, 2013, the Eleventh Circuit Court of Appeals issued an unpublished opinion affirming both the jury's verdict and the denial of Continental's motion for sanctions / attorney's fees. (Civil Action 10-0072, doc. 446.) A corresponding judgment was issued as mandate on April 2, 2013. (*Id.*, doc. 447.) Thus, there is now finality in the *Crouch* Action determination that Continental is not liable to the *Crouch* plaintiffs, but cannot shift its attorney's fees and costs to the *Crouch* plaintiffs.

"Distributor agrees to secure, to pay premiums on, and to furnish a Certificate of Insurance evidencing a Comprehensive General Liability Policy, including Products Liability, naming TCM as an additional insured with respect to, and only to the extent of, Distributor's indemnity obligations to TCM as set forth in this Agreement …. Distributor agrees to indemnify and hold TCM harmless from and against all claims, demands, obligations and liabilities, including injuries to, and death of, persons and loss or damage to property by whomsoever owned, to the extent that such claims, demands, obligations or liabilities have resulted from or arisen out of any act or omission of Distributor, its officers, agents, representatives, servants, or employees. With respect to any part sold or distributed by Distributor that is not a TCM part, Distributor agrees to defend and indemnify TCM for product liability or tort claims arising from the failure of such part."

(Doc. 92, Exh. A, ¶ 21.) Continental maintains in this lawsuit that Jewell Aircraft is in violation of its contractual obligations under Paragraph 21.

Following removal to this District Court on diversity grounds, this Court entered a series of rulings (including Orders dated July 30, 2012 (doc. 23) and November 28, 2012 (doc. 47)) whose combined effect was to pare down the triable claims. At present, the remaining causes of action joined herein consist of two Alabama common-law claims against Jewell Aircraft. Count I sounds in breach of contract and alleges that Jewell Aircraft "breached the Produc[t] Support Agreement by and through [its] failure and/or refusal to indemnify, defend and hold [Continental] harmless in regards to the [*Crouch*] Plaintiffs' claims against [Continental], including the appeal of the [*Crouch*] Action." (Doc. 1-1, ¶ 50.) Count II is styled as "Breach of Agreement to Procure Insurance" and alleges that Jewell Aircraft failed to obtain, provide and/or procure insurance coverage for the benefit of Continental, despite agreeing to do so in the Product Support Agreement. (*Id.*, ¶¶ 53-55.)[4] An important limitation on these claims pursuant to the July 30 Order is that they remain viable only insofar as Continental "seek[s] indemnity of

---

[4]     Jewell Aircraft's Motion for Summary Judgment and accompanying memoranda do not specifically address Count II. Nor does Jewell Aircraft explain why its arguments against liability under the indemnity provisions of the Product Support Agreement would affect Count II, which focuses on Jewell Aircraft's purported breach of an agreement to provide insurance coverage. *See generally Doster Const. Co. v. Marathon Elec. Contractors, Inc.*, 32 So.3d 1277 (Ala. 2009) ("A contractual obligation to indemnify is distinct from a contractual obligation to procure insurance.") (citation omitted). Even after Continental raised this point in its opposition brief (doc. 106, ¶ 32), Jewell Aircraft did not undertake to link its summary judgment arguments to Count II in any overt way.

attorney's fees and defense costs incurred by plaintiff in defending against the negligent installation cause of action in the underlying case."  (Doc. 23, at 28.)[5]

For its part, Jewell Aircraft brought a Counterclaim (doc. 24) against Continental.  This Counterclaim rests on paragraph 40 of the subject Product Support Agreement, which reads as follows:  "In the event of a litigation … between TCM and Distributor, the non-prevailing party, as determined by the court or arbitrator, shall pay to the prevailing party all costs and reasonable attorney's fees incurred by the prevailing party" in that litigation.  (Doc. 24, at 12.)  Jewell Aircraft maintains that if this Court enters summary judgment in its favor, then Jewell Aircraft will be a "prevailing party" entitled to recover its attorney's fees and costs in this fee litigation.[6]

As this litigation lurched forward and a host of discovery disputes (mostly relating to the determination of damages) emerged, Jewell Aircraft took the unconventional step of filing a Rule

---

[5]        The claims presented against Continental in the *Crouch* Action included claims of negligent failure to warn (*i.e.*, that Continental breached a duty to warn end users that its magneto was unsafe), breach of warranty  (*i.e.*, that Continental sold a magneto that was neither merchantable nor fit for its intended use), strict liability (*i.e.*, that Continental's magneto was an unreasonably dangerous product), and negligent installation (*i.e.*, that Continental was liable for negligent installation of the magneto by some combination of Jewell Aircraft, Inc., John Jewell Aircraft, Inc., and John Jewell).  Because the first three claims brought by the *Crouch* plaintiffs sought to recover from Continental for its own wrongful acts, the July 30 Order concluded that Alabama law precluded Continental from obtaining contractual indemnity for its attorney's fees and defense costs on those claims.  By contrast, the negligent installation claim was brought by the *Crouch* plaintiffs to recover from Continental for the Jewell defendants' acts or omissions, such that Alabama law might allow contractual indemnity in Continental's favor.  (Doc. 23, at 24-27.)

[6]        In essence, then, this Counterclaim is a fee dispute layered atop a fee dispute.  Continental says that Jewell Aircraft must reimburse Continental's attorney's fees incurred in the *Crouch* Action.  Jewell Aircraft denies liability and says that, furthermore, Continental must reimburse Jewell Aircraft's attorney's fees incurred in this litigation.  Of course, Continental also claims to be a "prevailing party" under Paragraph 40, such that it seeks attorney's fees and costs from this litigation as part of its award against Jewell Aircraft.  So the parties have neatly stacked one fee dispute on top of another one, both of these layered on top of an underlying case in which Continental was victorious.  All the while, new attorney's fees have continued to accrue.  Although "the Alabama Supreme Court has held that recovery of 'fees on fees' for seeking the right to indemnification is generally not permissible," such a fees-on-fees award is allowed where there is "express [contract] language giving the indemnitee such a right," which Jewell Aircraft argues is the case here.  *Mitchell Co. v. Campus*, 2009 WL 532246, *15 (S.D. Ala. Mar. 3, 2009) (citations omitted).

56 Motion focused on liability issues (not the damages issues threatening to bog down these proceedings) nearly two months before the discovery deadline, and nearly three months before the dispositive motions deadline. This development prompted Magistrate Judge Cassady to enter an Order (doc. 107) on May 3, 2013, memorializing the present state of affairs with respect to discovery and damages issues while recognizing that "it makes sense to resolve the [summary judgment] motion without simultaneously continuing to wage a potentially needless discovery war." (Doc. 107, at 8.) The May 3 Order therefore stayed all discovery "until, if necessary, the undersigned conducts a supplemental Rule 16 scheduling conference with parties following a ruling on the pending summary judgment motion." (*Id.* at 10.)

Jewell Aircraft's Motion for Summary Judgment identifies no fewer than eight grounds for relief, all of which the parties have briefed. Those asserted grounds are as follows: (1) Continental failed to make timely demand on Jewell Aircraft; (2) the Agreement does not apply because Jewell Aircraft has never been found to have caused the *Crouch* Plaintiffs' injuries; (3) attorney's fees and expenses are not reimbursable under the Agreement; (4) the Agreement does not apply to vicarious liability claims; (5) Continental should be estopped from arguing that there are any covered vicarious liability claims; (6) Continental has not proved that it incurred fees and costs in defending the negligent installation claim; (7) Continental is not entitled to fees and costs predating any demand to Jewell Aircraft or postdating dismissal of the negligent installation claim; and (8) Jewell Aircraft is a prevailing party entitled to its attorney's fees and costs under Paragraph 40 of the Agreement. The Court will consider these issues sequentially.

## II.     Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party

has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

### III. The Demand Issue.

As discussed *supra*, Paragraph 21 of the Product Support Agreement contains the subject indemnity provision. Although Paragraph 21 does not provide that Continental must adhere to any specific procedure to trigger Jewell Aircraft's indemnity obligations under the Agreement, Jewell Aircraft nonetheless argues that it is entitled to summary judgment under applicable law because Continental "never made a demand on JA to defend or indemnify." (Doc. 92, at 5.)

#### A. Relevant Facts.

Viewed in the light most favorable to Continental, the record facts relevant to the demand issue are as follows: The *Crouch* Action commenced against Continental in 2007. On April 22, 2010, Continental's counsel sent a letter to counsel for John Jewell Aircraft, Inc. (not Jewell Aircraft), naming John Jewell Aircraft, Inc. ("JJA") as the Continental distributor that had purchased and installed the magneto, calling JJA's attention to Paragraph 21 of the Agreement, and concluding, "Further to JJA's indemnity obligations to TCM and subject to the terms of the Agreement, we hereby tender TCM's defense of the above-named action to JJA and demand the indemnity JJA agreed to provide." (Doc. 92, Exh. B, at 1-2.) On May 21, 2010, JJA's counsel sent a response, explaining to Continental that "JJA … was never a distributor for TCM" and that "[a]s reflected in the Product Support Agreement you provided, Jewell Aircraft, Inc. ('JA') was TCM's distributor." (Doc. 92, Exh. C.) Notwithstanding this clarification, Continental never submitted a written demand directly to Jewell Aircraft, as opposed to JJA. Instead, Continental's counsel sent another demand letter to JJA on May 5, 2011, reiterating its incorrect position that "in paragraph 21 of the Agreement, JJA agrees to indemnify TCM" and cautioning that regardless of the outcome of the *Crouch* Action, "there will be a post-verdict action for contractual indemnity against JJA in which we are confident we will prevail." (Doc. 92, Exh. G, at 2.) In a third letter to JJA dated July 6, 2011, Continental's counsel stated, "This is to advise

that TCM continues to assert its claims against JJA under the Agreement as previously set forth." (Doc. 92, Exh. H, at 2.)

Thus, the summary judgment record reflects that all demands for indemnity made by Continental were directed to JJA, not to Jewell Aircraft. It is undisputed on this record that no demand was made to Jewell Aircraft.[7] The legal question presented by the Rule 56 Motion is whether such a demand was a prerequisite to Continental's ability to recover attorney's fees and defense costs incurred in the *Crouch* Action.

### B.    Whether Alabama Law Requires Demand (as Opposed to Notice).

Despite the absence of any provision in the Agreement requiring a formal demand to activate its Paragraph 21 indemnity duty, Jewell Aircraft maintains that it is entitled to summary judgment because Alabama law requires such a demand. In response, Continental counters that Alabama law contains no such demand requirement. To resolve this dispute over Alabama law, the Court "must decide the case the way it appears the state's highest court would." *Clark v. Riley*, 595 F.3d 1258, 1264 (11th Cir. 2010).

---

[7]    At best, Continental devotes several pages of its summary judgment brief to an exposition of facts purporting to show a close relationship between Jewell Aircraft and JJA, ostensibly to support its position that demand was equally effective whether made to Jewell Aircraft or JJA. (Doc. 106, at 33-36.) But Continental does not explain why these facts matter or provide (much less apply) any legal framework for its apparent contention that a demand on JJA was equivalent to a demand on Jewell Aircraft. The Court cannot and will not develop such an argument for plaintiff. *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties."). Indeed, this marks at least the second time in this litigation that Continental has sought to advance an ill-defined, undeveloped "alter ego" theory for treating Jewell Aircraft and JJA as a single indivisible entity for purposes of assessing legal rights and obligations. On Rule 12(b) review, the undersigned declined a similar invitation by plaintiff to surmise from a set of raw facts devoid of analytical structure that JJA is Jewell Aircraft's alter ego so as to justify piercing the corporate veil. *See Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp.2d 1296, 1304-05 (S.D. Ala. 2012). The same conclusion attaches here. Nor does Continental further its cause on summary judgment by pointing to records that Jewell Aircraft had been temporarily "administratively dissolved" in Tennessee at the time of Continental's demands. (Doc. 106, at 36.) Plaintiff does not explain the legal significance of that dissolution for purposes of any demand requirement under Alabama law, much less identify any legal principle or authority that might have conferred upon Continental in those circumstances the unilateral authority to substitute JJA willy-nilly for Jewell Aircraft in any demand that might have been required.

The sole authority cited by Jewell Aircraft for this proposition is *Stone Bldg. Co. v. Star Elec. Contractors, Inc.*, 796 So.2d 1076 (Ala. 2000). More precisely, the sole authority cited by Jewell Aircraft is a solitary sentence in the *Stone* opinion reading as follows: "Thus, Stone's right to indemnification by Star extends to Stone's expenses of defense, including attorney fees, attributable specifically to Stone's defense against the Clines' claims and accruing after, and only after, Stone demanded indemnification from Star." *Id.* at 1092. This language lends superficial support to Jewell Aircraft's position that some kind of formal indemnification demand is necessary before defense expenses may be recovered in a contractual indemnity claim. As Continental correctly observes, however, Jewell Aircraft places far more weight on this isolated passage in *Stone* than it can reasonably bear. As a threshold matter, this language is *dicta*, "[a]nd *dicta* is not binding on anyone for any purpose." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010). While *dicta* may be helpful to the extent it has the power to persuade, nothing about this particular passage from *Stone* bears any sort of indicia of reliability as a statement or forecast of Alabama law because it is devoid of reasoning, justification or elaboration that might explain where the "demanded indemnification" language came from, how it would operate, or why the *Stone* Court thought it was a good idea.

By all appearances, the Alabama Supreme Court had never previously observed or endorsed a formal demand requirement (as opposed to a notice requirement) in the contractual indemnification context. The *Stone* decision cites no such authorities, and Jewell Aircraft identifies none (in Alabama or any other jurisdiction, for that matter). What's more, *Stone* does not proffer any explanation or rationale for a demand requirement, which one would expect to see if (as Jewell Aircraft argues) the *Stone* court intended to make new law by cutting a brand-new procedural requirement from whole cloth. Additionally, the bare, cursory statement that indemnification for attorney's fees arises only after "Stone demanded indemnification from Star" says precisely nothing about what constitutes a demand for indemnification and how (if it all) such a demand requirement differs from the long-established, well-settled notice requirement in the contractual indemnity context. So, while Jewell Aircraft maintains that the Alabama Supreme Court in *Stone* unveiled in *dicta* a brand-new, never-previously-recognized demand prerequisite to liability for defense costs in a contractual indemnity setting, the *Stone* Court did not provide any legal antecedents for such a rule, did not present any doctrinal or policy justification for adopting it, did not apply it, did not specify how it would operate in practice, and

did not offer even the slightest inkling of how (if at all) it diverges from Alabama's longstanding notice requirement.[8]  Furthermore, no Alabama published opinion in the 12 years since *Stone* was decided appears to have recognized, discussed, applied or elaborated on the "demand" language from *Stone*.  These circumstances, considered together, undermine Jewell Aircraft's position that *Stone* mandates a new demand requirement under Alabama law whenever an indemnitee seeks to recover attorney's fees from an indemnitor pursuant to a contractual indemnity clause.

For all of the foregoing reasons, the Court finds that Jewell Aircraft has not made a sufficient legal showing to demonstrate that Alabama law engrafts a requirement in contractual indemnity cases that "a valid, written demand on the actual indemnitor is required before the indemnitee can seek fees and costs."  (Doc. 108, at 5.)  Defendant's Motion for Summary Judgment is therefore **denied** insofar as it is predicated on this argument.

### C.   *Notice and Timeliness Issues.*

As a fallback to its "valid, written demand" argument, Jewell Aircraft maintains that it is entitled to summary judgment because the notice furnished by Continental did not comport with Paragraph 34 of the Agreement and was untimely.  The Court considers these arguments in turn.

Notwithstanding the absence of a demand requirement, it is beyond cavil that Alabama law requires an indemnitee to give notice to the indemnitor of the legal action against the indemnitee (*i.e.*, the *Crouch* Action).[9]  In its summary judgment filings, Jewell Aircraft does not

---

[8]      On this last point, Jewell Aircraft lambastes Continental, saying "CMI confuses 'notice' with 'demand.'"  (Doc. 108, at 6.)  The notice requirement (as discussed *infra*) has been a bedrock feature of Alabama indemnity law for decades.  The purported demand requirement has apparently never been discussed anywhere in any Alabama published authority, other than this single unexplained sentence in *Stone* upon which Jewell Aircraft relies.  Nothing in the text of *Stone* suggests that the Alabama Supreme Court was attempting to derive a brand-new, distinct requirement separate from the notice rule.  Given the precedential and doctrinal context, it seems likely that the *Stone* Court's use of the word "demand" was simply an imprecise reference to the well-settled notice rule addressed elsewhere in the opinion.  In that event, Continental did not confuse anything, because what Jewell Aircraft touts as two distinct requirements actually collapse into one and the same.

[9]      *See, e.g., Burkes Mechanical, Inc. v. Ft. James-Pennington, Inc.*, 908 So.2d 905, 911 (Ala. 2004) ("To be sure, in order to preserve an indemnity claim, the indemnitee must timely notify the indemnitor of the action against the indemnitee."); *Cochrane Roofing & Metal Co. v. Callahan*, 472 So.2d 1005, 1008 (Ala. 1985) (holding that for contractual indemnity (Continued)

deny that notice was given; however, Jewell Aircraft does maintain that the notice furnished by Continental was legally deficient because it "fail[ed] to strictly comply with the Agreement's notice requirement." (Doc. 92, at 7.) In particular, Paragraph 34(b) of the Product Support Agreement states in relevant part as follows:

> "Any notice, notification or other written communication required or permitted under this Agreement shall be deemed received three (3) business days after its deposit in the postal system …, 'first class' or equivalent postage paid, addressed to the Distributor at its last mailing address …. Delivery of such notice, notification or other written communication by any other means shall be effective upon actual receipt by an authorized representative of the party to whom it is directed."

(Doc. 92, Exh. A, ¶ 34(b).)

There are at least two problems with Jewell Aircraft's notice argument. First, defendant does not explain why it believes the notice required under Alabama common law is one "required or permitted under this Agreement," so as to be subject to Paragraph 34(b) at all. Again, the notice requirement for contractual indemnity is a creation of Alabama law and is not referenced, adopted or imposed in the text of the Agreement; therefore, Paragraph 34(b) appears inapplicable. Second, defendant makes no threshold showing that notice of the *Crouch* Action was never "actually received by an authorized representative" of Jewell Aircraft within the meaning of Paragraph 34(b), so as to be deficient. As the summary judgment movant, Jewell Aircraft bears the burden of making an initial factual showing to support its argument. *See, e.g., Smith v. Florida Dep't of Corrections*, 713 F.3d 1059, 1063 (11th Cir. 2013) ("The moving party bears the initial burden of showing the court … that there are no genuine issues of material fact that should be decided at trial.") (citation omitted). Defendant does not satisfy that burden by making a blanket, conclusory, factually unsupported statement that notice was not delivered to its authorized representative. Yet that is all Jewell Aircraft offers on this point. For these reasons, the Paragraph 34(b) argument does not entitle Jewell Aircraft to summary judgment.

As to the timeliness component, Jewell Aircraft presents a cursory argument that Continental's demand for indemnity was not timely because the *Crouch* Action began in 2007,

---

provision "to be binding on the party agreeing to indemnify and save harmless the other party, he must receive notice of a claim which he must defend, for only in this way can he investigate the claim and prepare his defense").

yet written demand was not made until April 2010.  (Doc. 92, at 8).  This half-hearted contention fails because Jewell Aircraft has identified no prejudice attendant to the delay.  Under Alabama law, "in order to preserve an indemnity claim, the indemnitee must timely notify the indemnitor of the action against the indemnitee."  *Burkes Mechanical, Inc. v. Ft. James-Pennington, Inc.*, 908 So.2d 905, 911 (Ala. 2004); *see also Ex parte Jones, Morrison, Womack & Dearing, P.C.*, 939 So.2d 912, 915 (Ala. 2006) ("an indemnitee must give timely notice to the indemnitor in order to preserve an indemnity claim").  But Alabama law is equally clear that "tardiness *without prejudice* provides no defense" to a contractual indemnity claim.  *Burkes Mechanical*, 908 So.2d at 911 (citation omitted).  Where, as here, the indemnitor fails to show how it was prejudiced by alleged untimely notice, the timeliness defense is unavailable as a matter of law.[10]  Accordingly, Jewell Aircraft's contention that the demand/notice by Continental was untimely does not entitle it to summary judgment.

**IV.     Whether Indemnity Is Available without Judgment or Good-Faith Settlement.**

Jewell Aircraft's next summary judgment argument is a two-pronged theory that (i) the language of Paragraph 21 requires a finding of causation by Jewell Aircraft as a prerequisite to any indemnification obligation, and (ii) Continental's claim is foreclosed by *Steed v. Central of Georgia Railway Corp.*  Neither contention is persuasive.

---

[10]     In its principal brief, Jewell Aircraft neither alleged nor even suggested prejudice in its untimeliness argument.  (Doc. 92, at 8.)  In its reply brief, Jewell Aircraft for the first time asserts that it was prejudiced because "[h]ad TCM made a demand on JA, … JA could have immediately filed a declaratory judgment action to determine its duty, if any, to defend TCM long before TCM's attorneys racked up millions in fees and expenses." (Doc. 108, at 4.)  This contention fails for four reasons.  First, it is improperly raised for the first time in a reply.  *See, e.g., Windham v. City of Fairhope*, 2013 WL 1679355, *8 n.13 (S.D. Ala. Apr. 16, 2013) ("federal courts generally do not consider new, previously available arguments unveiled in reply briefs").  Second, the argument fails on its merits because Jewell Aircraft is not claiming prejudice from untimely notice, but is instead claiming prejudice from Continental's failure to make a demand (which, as noted *supra*, is a distinct issue).  As addressed *supra*, there is no demand requirement, so any prejudice accruing to Jewell Aircraft by virtue of an untimely demand is inconsequential.  Third, defendant does not identify any prejudice arising from untimely notice of the *Crouch* Action, or even show that notice was untimely given.  Fourth, Alabama law specifies that the type of prejudice that matters is not a foregone opportunity to bring a declaratory judgment action, but is instead impairment of the indemnitor's "ability to investigate and determine the basis of the underlying claim," *Burkes Mechanical*, 908 So.2d at 913, which Jewell Aircraft has not called into question.

-11-

The first facet of this argument is Jewell Aircraft's assertion that, pursuant to *National R.R. Passenger Corp. v. Rountree Transport and Rigging, Inc.*, 286 F.3d 1233 (11th Cir. 2002), Paragraph 21's "inclusion of the phrase 'to the extent' means that [Jewell Aircraft] had to be found to have caused the plaintiff's injuries before [Jewell Aircraft] had any duty to *indemnify* [Continental]." (Doc. 92, at 11.)  Defendant's reliance on *Rountree* is unavailing and frankly puzzling because (i) the Eleventh Circuit was applying Florida law, not Alabama law;[11] and (ii) the language of the indemnity provision at issue in *Rountree* differed materially from that in Paragraph 21 of the Product Support Agreement.[12]

More broadly, Jewell Aircraft's reading of the "to the extent" phrase as importing a concept of fault (and, indeed, a requirement of a jury determination of fault by Jewell Aircraft) fails because it is not supported by any reasonable construction of the contractual language. Again, Paragraph 21 provides that Jewell Aircraft must indemnify and hold Continental harmless "from and against all claims, demands, obligations and liabilities … to the extent that such claims, demands, obligations or liabilities have resulted from or arisen out of any act or omission of [Jewell Aircraft], its officers, agents, representatives, servants, or employees." (Doc. 92, Exh.

---

[11]     Curiously, as part and parcel of this same argument, Jewell Aircraft attacks Continental for citing authorities that "are inapplicable because *Shannon* specifically applied Florida law and *Brown* specifically applied Georgia law." (Doc. 108, at 10.)  In the next breath, however, Jewell Aircraft insists that *Rountree* requires entry of summary judgment in its favor, all the while glossing over the inconvenient truth that *Rountree* specifically applied Florida contractual indemnity law.  *See Rountree*, 286 F.3d at 1259-63.

[12]     In particular, the *Rountree* indemnity clause provided that the indemnitor would indemnify the indemnitee "from and against all liability, claims, damages, losses and expenses … to the extent of and on account of ***any negligent act or omission of***" the indemnitor. *Rountree*, 286 F.3d at 1260 (emphasis added).  By contrast, Paragraph 21 provided that Jewell Aircraft would "indemnify and hold TCM harmless from and against all claims, demands, obligations and liabilities, … to the extent that [they] have resulted from or arisen out of ***any act or omission of***" Jewell Aircraft.  (Doc. 92, Exh. A, ¶ 21 (emphasis added).  Paragraph 21 is missing the modifier "negligent" that was of central importance to the *Rountree* analysis; indeed, the Eleventh Circuit interpreted that language as indicating "that any payment of attorney's fees or other expenses is limited to situations where [the indemnitor] itself has been found negligent." *Rountree*, 286 F.3d at 1262.  The "negligent" qualifier was not implied by law to avoid undesirable outcomes (as Jewell Aircraft seems to suggest), but was expressly stated in the text of the indemnity clause.  No such contractual language exists here, so movant's reliance on *Rountree* appears misplaced.

A, ¶ 21.) By the express terms of the contract, the relevant inquiry is whether the *Crouch* Action included "claims" that "resulted from" or "arose out of" any act or omission of Jewell Aircraft. As addressed at length in previous orders, one of the claims asserted in the *Crouch* Action was that Continental was vicariously liable for the negligent installation of the magneto by Jewell Aircraft. For summary judgment purposes, this Court cannot conclude as a matter of law that this claim did not result from or arise out of an act or omission of Jewell Aircraft, its agents or representatives (*i.e.*, its alleged installation of the magneto); therefore, such a claim may fall within the terms of Paragraph 21's indemnification provision. Defendant's argument to the contrary is unavailing on Rule 56 review.[13]

    The second feature of this ground for summary judgment relief is Jewell Aircraft's contention that Continental's indemnity claims are "barred by the rule in" *Steed v. Central of*

---

[13]    The linchpin of Jewell Aircraft's reasoning is the notion that unless Jewell Aircraft were first found to have caused the *Crouch* plaintiffs' injuries, the phrase "to the extent" "must be read out of the Agreement." (Doc. 92, at 11.) The Court disagrees. Nothing in Continental's common-sense, plain-meaning interpretation of Paragraph 21 would read "to the extent" out of the contract. Paragraph 21 says that Jewell Aircraft must indemnify Continental from all claims "to the extent that" they result from or arise out of Jewell Aircraft's acts or omissions. In Continental's view, the *Crouch* plaintiffs' negligent installation claim against Continental resulted from or arose out of Jewell Aircraft's acts or omissions because the *Crouch* plaintiffs alleged that Jewell Aircraft had negligently installed the magneto. To that extent, then (*i.e.*, insofar as the *Crouch* Action included claims arising from Jewell Aircraft's acts or omissions, such as its installation of the magneto), Jewell Aircraft owed an indemnity obligation to Continental under Paragraph 21. Contrary to Jewell Aircraft's insistence, nothing would be read out of the Agreement to reach that conclusion. While movant balks that any finding of an indemnity obligation under Paragraph 21 without a judgment that Jewell Aircraft caused the *Crouch* plaintiffs' injuries would read the "to the extent" clause out of the Agreement, the practical effect of Jewell Aircraft's position would be to read into the Agreement nonexistent limitations on indemnity obligations to apply only to conduct of Jewell Aircraft that a jury has found to be negligent or otherwise wrongful and to have caused the underlying loss. Paragraph 21 contains no such verbiage, and an interpreting court cannot import into a contract terms and concepts that the contracting parties did not see fit to include (except as required by law). *See, e.g., Public Bldg. Authority of City of Huntsville v. St. Paul Fire and Marine Ins. Co.*, 80 So.3d 171, 180 (Ala. 2010) ("A court may not make a new contract for the parties or rewrite their contract under the guise of construing it.") (citations omitted); *Title Max of Birmingham, Inc. v. Edwards*, 973 So.2d 1050, 1054 n.1 (Ala. 2007) ("It is not a function of the courts to make new contracts for the parties, or raise doubts where none exist.") (citations omitted). Therefore, defendant's plea for a judicial rewrite of Paragraph 21 to impose limits and conditions on Jewell Aircraft's indemnity obligation that are not found in the plain language of the contract and are not required by law cannot succeed on summary judgment.

*Georgia Ry. Corp*, 529 F.2d 833 (5th Cir. 1976). (Doc. 92, at 12.) According to movant, "*Steed* requires either a finding of liability or a valid demand followed by a settlement" before any right to contractual indemnity is cognizable. (Doc. 108, at 9.) Contrary to Jewell Aircraft's position, the *Steed* panel does not purport to apply Alabama law; indeed, the facts in *Steed* concern a railroad accident that occurred in Trion, Georgia, and the relevant cases cited in that opinion are exclusively drawn from other federal circuits and Georgia appellate courts. Moreover, nowhere does *Steed* declare that contractual indemnity for defense costs is barred as a matter of law absent a judgment of indemnitee liability or a settlement in the underlying action; therefore, it is highly doubtful that *Steed* lends any support to Jewell Aircraft's position, much less that it stands for the specific legal principle for which Jewell Aircraft repeatedly cites *Steed*.

What long-standing Alabama law does say is that "contracts should be construed as written … and that policy generally applies to indemnity contracts." *Holcim (US), Inc. v. Ohio Cas. Ins. Co.*, 38 So.3d 722, 728 (Ala. 2009) (citations and internal quotation marks omitted). Of course, nothing in Paragraph 21 or the Agreement as a whole would establish a precondition for Jewell Aircraft's indemnity obligations either a finding that Continental was liable in the *Crouch* Action or a settlement paid by Continental in that lawsuit. Moreover, a wealth of persuasive authorities from around the country (uncontradicted by Alabama caselaw) recognize that when an indemnitee must defend against a claim filed by a third party, that circumstance may itself give rise to a contractual indemnity obligation for costs of defense, without regard to the indemnitee's ultimate liability or lack thereof to the third party. *See generally Tull Bros., Inc. v. Peerless Products, Inc.*, --- F. Supp.2d ----, 2013 WL 3010812, *9 (S.D. Ala. June 18, 2013) ("Express indemnity agreements are contractual provisions in which one party to the contract agrees to pay costs incurred by the other party to the contract as a result of the other party being held liable to a third party *or having to defend against a claim* filed by a third party.") (emphasis added and citation omitted).[14] In light of these extensive persuasive authorities and the paucity

---

[14]     *See also Shannon v. Kaiser Aluminum and Chemical Corp.*, 749 F.2d 689, 690-91 (11th Cir. 1985) ("Under Florida law, the general rule is that an indemnitee under an indemnification agreement is entitled to recover reasonable attorney's fees and legal costs which he is compelled to pay as a result of suits brought against him relating to matters for which he is entitled to be indemnified. … *This rule is equally applicable whether the indemnitee is successful in his defense of the suit or not.*") (emphasis added and citations omitted); *Bainville v. Hess Oil V.I. Corp.*, 837 F.2d 128, 131 (3rd Cir. 1988) (as to whether a determination of actual (Continued)

liability rather than potential liability is a precondition of contractual duty to indemnify, "[t]hat determination, according to elementary principles of contract law, is clearly a matter of the intent of the parties" as opposed to a hard and fast rule); *Brown v. Seaboard Coast Line R. Co.*, 554 F.2d 1299, 1304 (5th Cir. 1977) (under Georgia law, "at least with respect to contractual indemnity, a judgment fixing liability is not a prerequisite to recovery on the contract. … Moreover, the railroad switching agreement did not specify the requirement of a judgment as a condition precedent to recovery and thus the right of indemnity exists here without regard to whether a judgment against the railroad was obtained."); *S.C. Johnson & Son, Inc. v. Dowbrands, Inc.*, 2004 WL 2203974, *8 (3rd Cir. June 23, 2004) ("[T]he district court held that Defendants' liability to indemnify SCJ for attorney's fees did not depend on the merits of that suit or its outcome. … We agree with the district court's reading of the scope of Defendants' obligation to indemnify SCJ under the Purchase Agreement"); *White v. Dietrich Metal Framing*, 2007 WL 7050943, *3 (E.D. Tex. Nov. 29, 2007) (opining that "[w]hile the language, 'indemnify and save harmless,' does not create an affirmative duty to defend, it implies a duty to reimburse for costs of defense, whether successful or not" and recognizing that courts "have permitted the recovery of defense costs without regard to the indemnitee's liability in the underlying action") (citations and internal quotation marks omitted); *Kruzits v. Okuma Machina Tool, Inc.*, 30 F. Supp.2d 490, 491 (E.D. Pa. 1998) (awarding defense costs to indemnitee pursuant to contractual indemnification provision, even though indemnitee prevailed on summary judgment in underlying action); *Starobin v. Randolph Computer Corp.*, 689 F. Supp. 323, 327 (S.D.N.Y. 1988) ("It is not necessary that an indemnitee have sustained actual damages in the main action in order to be entitled to enforce an agreement as to indemnification for attorneys' fees."); *Hennard v. Boyce*, 776 N.Y.S.2d 411, 413 (N.Y.A.D. 4 Dept. 2004) ("The claim of Keating for contractual indemnification is viable, notwithstanding the dismissal of the amended complaint against it, insofar as Javen may be contractually obligated to indemnify Keating for attorneys' fees and other litigation costs incurred by Keating in defending the action thus far."); *Rogers v. Babler, Div. of MAPCO ALASKA, Inc. v. State*, 713 P.2d 795, 800 (Alaska 1986) ("There exists no affirmative duty to defend under the language 'indemnify and save harmless', but only a duty to reimburse for costs of defense, ***whether successful or not***.") (emphasis added); *Amoco Oil Co. v Buckley Heating, Inc.*, 495 N.E.2d 875, 876 (Mass.App.Ct. 1986) ("There is no merit to Buckley's secondary argument that if the indemnity covers legal expenses, it does so only as a component of damages paid by the party to be indemnified; i.e., if the indemnitee defeats an action and, therefore, is not out of pocket for damages, it cannot recover legal expenses. Adopting Buckley's position would lead to the aberrant consequence that an indemnitee would be better off supinely surrendering to a claim, than intelligently resisting it."); *INA Ins. Co. of North America v. Valley Forge Ins. Co.*, 722 P.2d 975, 982 (Ariz.App. 1986) ("when a claim is made against an indemnitee for which he is entitled to indemnification, the indemnitor is liable for any reasonable expenses incurred by the indemnitee in defending against such claim, regardless of whether the indemnitee is ultimately held not liable") (citation omitted); *Chadwick-BaRoss, Inc. v. Martin Marietta Corp.*, 483 A.2d 711 (Me. 1984) (where indemnitee was exonerated by jury verdict in underlying suit, indemnitor remained contractually obligated to reimburse indemnitee for all attorney's fees and expenses incurred in that successful defense); *Farber v. State*, 682 P.2d 630, 631 (Idaho 1984) ("The rule in most (Continued)

of contrary Alabama law, the Court readily concludes that what Jewell Aircraft dubs "the rule in *Steed*" does not entitle defendant to summary judgment here. The absence in the *Crouch* Action of either a money judgment against Continental or an out-of-pocket settlement by Continental in no way affects that entity's right to contractual indemnity from Jewell Aircraft for the costs of defending against the negligent installation claim, for which Jewell Aircraft owed Continental a contractual duty of indemnity to the extent that such claim arose from the acts or omissions of Jewell Aircraft, its agents or representatives.

## V.      Whether Attorney's Fees and Expenses are Reimbursable under the Agreement.

Movant's next contention in support of its Rule 56 Motion is that Paragraph 21 lacks a "crucial condition precedent" that must be satisfied in order for Jewell Aircraft to be contractually obligated to reimburse Continental for attorney's fees and defense costs. Recall that the relevant language of Paragraph 21 provides that "Distributor agrees to indemnify and hold TCM harmless from and against all claims, demands, obligations and liabilities … to the extent that such claims, demands, obligations or liabilities have resulted from or arisen out of any act or omission of Distributor, its officers, agents, representatives, servants, or employees." (Doc. 92, Exh. A, ¶ 21.) In this argument, Jewell Aircraft emphasizes the "indemnify and hold … harmless" verbiage, pointing out that the word "defend" does not appear. In defendant's view, "[t]he lack of 'defend' language destroys CMI's case." (Doc. 92, at 13.) This argument is not well taken.

Alabama law unequivocally refutes the notion that a contractual indemnity clause does not allow for recovery of attorney's fees incurred in the underlying case unless it utilizes magic language like "defend." To reach this conclusion, one need look no further than *Stone Bldg. Co.*

---

jurisdictions, regardless of whether indemnity is based upon an implied or an express agreement, is that when a claim is made against an indemnitee for which he is entitled to indemnification, the indemnitor is liable for any reasonable expenses incurred by the indemnitee … regardless of whether the indemnitee is ultimately held not liable.") (citations omitted); 42 C.J.S. *Indemnity* § 24 ("An indemnitor is liable for attorney's fees whether the defense is successful or not" and "an indemnitee is entitled to attorney's fees and expenses whether or not it ultimately sustained actual damages"); *Alabama Law of Damages* (6th ed.), § 10:7 ("Payment of a judgment is not a prerequisite to an action on a contract of indemnity against liability.").

*v. Star Elec. Contractors*, 796 So.2d 1076 (Ala. 2000), which is directly on point.[15]  In *Stone*, the contractual indemnity provision stated that "[t]he Subcontractor covenants to indemnify and save harmless and exonerate the Contractor … of and from all liability, claims and demands for bodily injury … arising out of the work undertaken by the Subcontractor."  796 So.2d at 1078.  Notably missing from that indemnity contract were terms such as "defend" or "attorney's fees."  Nonetheless, the Alabama Supreme Court held in *Stone* that the subcontractor's agreement to "indemnify and save harmless and exonerate" the contractor entitled the contractor to recover its reasonable attorney's fees incurred in the underlying dispute.  *Id.* at 1091-92.  In particular, the *Stone* Court surveyed Alabama law and concluded that "an indemnitee is entitled to recover, as part of the damages, reasonable attorney fees which it is compelled to pay as a result of suits against it in reference to the matter against which it is indemnified."  *Id.* at 1091 (citation omitted).  Based on its discussion of Alabama law, *Stone* determined that the contractor's right to indemnification "extends to [contractor's] expenses of defense, including attorney fees."  *Id.* at 1092.  On its face, *Stone* appears irreconcilable with Jewell Aircraft's summary judgment argument that contractual indemnity does not encompass defense costs unless the talismanic words "defend" or "attorney's fees" appear in the contract.[16]

---

[15]     *Stone* figures prominently in Jewell Aircraft's Rule 56 Motion, but is inexplicably ignored in this section of movant's briefs.  Indeed, *Stone* was the centerpiece of the "demand" argument presented on pages 5 through 7 of defendant's principal brief, yet Jewell Aircraft made no mention of it in the "defend" argument presented on pages 13 through 17, despite its obvious application to same.  (*See* doc. 92.)  Moreover, Continental discussed *Stone* and three other cases in the section of its brief responding to the "defend" argument.  (*See* doc. 106, at 23-24.)  In its reply, Jewell Aircraft addressed the other three cases, yet once again failed to acknowledge the unfavorable ramifications of *Stone*.  (*See* doc. 108, at 12.)

[16]     Nor is this aspect of *Stone* aberrational or unique in the Alabama precedential landscape.  In *Winn-Dixie Montgomery, Inc. v. Stimpson*, 574 So.2d 782 (Ala. 1991), the relevant indemnity clause specified that "Landlord shall indemnify and save harmless the Tenant from any claim or loss by reason of accident or damage to any person or property happening on or about all common areas."  *Id.* at 783.  The agreement lacked "defense" or "attorney's fee" buzzwords; however, the Alabama Supreme Court interpreted the provision as follows: "we hold that Winn-Dixie is entitled to indemnification by the landlords for all expenses incurred as a result of the judgment based on Mrs. Brown's claims against Winn-Dixie, ***including a reasonable attorney fee***."  *Id.* at 784 (emphasis added).  Alabama appellate courts have long recognized that "[o]ur supreme court has held that a party entitled to indemnification is entitled to recover a reasonable attorney fee as part of the expenses incurred."  *Walker v. Bailey*, 686 So.2d 304, 308 (Ala.Civ.App. 1996); *see also E.C. Ernst, Inc. v. Manhattan Const. Co. of Texas*, (Continued)

-17-

Jewell Aircraft responds to this debilitating obstacle to its Rule 56 Motion by seizing on one court's observation that "[i]nclusion of attorney's fees is presumed to have been the intent of the drafter unless the agreement explicitly says otherwise." *E.C. Ernst, Inc. v. Manhattan Const. Co. of Texas*, 551 F.2d 1026, 1037 (5th Cir. 1977) (forecasting Alabama law). Now, Jewell Aircraft cannot point to any language in Paragraph 21 explicitly excluding attorney's fees and defense costs from the ambit of its indemnification obligation. No such language exists. Nonetheless, Jewell Aircraft urges the Court to infer that Continental (the drafter of the Product Support Agreement) intended to exclude attorney's fees from the indemnification provision because it omitted the word "defend" in that provision, whereas it did utilize it elsewhere.[17] Defendant's evidence shows that Continental knew how to use the word "defend" in the Agreement, yet it did not use that word in the contract provision in which Jewell Aircraft agreed to indemnify Continental for claims, demands or liabilities that resulted form or arose out of Jewell Aircraft's acts or omissions. This reasoning is not persuasive because omission of the

_____

551 F.2d 1026, 1037 (5th Cir. 1977) (forecasting that "Alabama would follow the generally held view that indemnification agreements contemplate payment for attorney's fees incurred in litigation with third parties concerning the matter indemnified against, regardless of whether they say so"); *Alabama Law of Damages* (6th ed.), § 10:7 (in contractual indemnity context, "it is assumed that the agreement, **whether it says so or not**, was intended to include attorney's fees") (emphasis added). These principles appear fully in step with national norms. *See generally Shannon*, 749 F.2d at 691 ("Although this agreement did not expressly provide for the payment of attorney's fees and costs, … we hold that Kaiser is entitled to indemnification of its reasonable attorney's fees and costs incurred in defending against Shannon's suit."); 7 *Causes of Action 2d* 509, § 36 ("Even when the indemnity agreement does not specifically permit recovery of attorney's fees, the broad language typically used in such agreements, promising to 'hold the indemnitee harmless' … may be held to require or permit payment of attorney's fees."), 42 C.J.S. *Indemnity* § 24 ("As a general rule, an indemnitee is entitled to recover, as a part of the damages, reasonable attorney's fees, and reasonable and proper legal costs and expenses, **even though not expressly mentioned**.") (footnotes omitted and emphasis added).

[17]  For example, Jewell Aircraft points to a provision in the Agreement specifying that "Distributor hereby releases and agrees to defend, indemnify and hold TCM harmless from any and all claims relating to any engine which has been 'shipped in place' pursuant to a shipping hold requested by Distributor." (Doc. 92, Exh. A, ¶ 14(d).) And Jewell Aircraft also cites a provision stating, "With respect to any part sold or distributed by Distributor that is not a TCM part, Distributor agrees to defend and indemnify TCM for product liability or tort claims arising from the failure of such part." (*Id.*, ¶ 21.)

word "defend" is not the sort of <u>explicit</u> statement of exclusion of attorney's fees envisioned by *E.C. Ernst* as being necessary to overcome the presumption that such fees were intended to be included.

More fundamentally, Jewell Aircraft's reasoning is faulty because it conflates a duty to defend with the legally distinct duty to reimburse attorney's fees and costs. *See, e.g., White v. Dietrich Metal Framing*, 2007 WL 7050943, *3 (E.D. Tex. Nov. 29, 2007) (opining that "[w]hile the language, 'indemnify and save harmless,' does not create an affirmative duty to defend, it implies a duty to reimburse for costs of defense") (citations and internal quotation marks omitted); *Rogers & Babler, Div. of MAPCO ALASKA, Inc. v. State*, 713 P.2d 795, 800 (Alaska 1986) ("There exists no affirmative duty to defend under the language 'indemnify and save harmless', but only a duty to reimburse for costs of defense, whether successful or not. This comports with the law in most jurisdictions.").[18] The very same paragraph of the very same case on which Jewell Aircraft relies makes clear that reimbursement of attorney's fees is ordinarily part and parcel of the duty to indemnify, separate and apart from any duty to defend. *See E.C. Ernst*, 551 F.2d at 1037 ("Inclusion of attorney's fees is presumed to have been the intent of the drafter unless the agreement explicitly says otherwise. This rule simply gives effect to the very nature of indemnity, which is to make the party whole. [T]rue indemnification would contemplate the inclusion of these items.") (footnote, internal quotation marks and citations omitted). Perhaps Jewell Aircraft could make a persuasive argument that omission of the word "defend" from Paragraph 21 means that Continental did not intend for Jewell Aircraft to owe it a contractual duty to defend as to claims arising from Jewell Aircraft's acts or omissions. But

---

[18]    *See also Cambridge Integrated Services Group, Inc. v. Concentra Integrated Services, Inc.*, 697 F.3d 248, 254 (5th Cir. 2012) ("[t]he duty to indemnify and the duty to defend clearly are separate and distinct duties") (citation omitted); *Crimson Exploration, Inc. v. Intermarket Management, LLC*, 341 S.W.3d 432, 441 (Tex.App.-Hous. 2010) ("The duty to defend and the duty to indemnify are independent and the existence of one does not necessarily depend on the existence or proof of the other. … This is true even when a party is seeking indemnity for the cost of its defense.") (citations and internal quotation marks omitted); *Crawford v. Weather Shield Mfg. Inc.*, 187 P.3d 424, 432 (Cal. 2008) ("A duty to defend another, stated in that way, is thus different from a duty expressed simply as an obligation to pay another, after the fact, for defense costs the other has incurred in defending itself."); *Miley v. Johnson & Johnson Orthopaedics, Inc.*, 668 N.E.2d 369, 372 (Mass.App.Ct. 1996) ("The inclusion of attorney's fees as an expense for which there shall be indemnity does not automatically impose a duty to defend similar to that inherent in an insurance contract.").

omission of the word "defend" cannot reasonably, logically or credibly be viewed as evincing an intent by the Agreement's drafter to exclude reimbursement of attorney's fees from the make-whole function of the "indemnify and hold harmless" language set forth in Paragraph 21.

Because the Agreement does not evince (much less explicitly state) any intent not to include reimbursement of attorney's fees amongst Jewell Aircraft's indemnity obligations, the Court finds that the *E.C. Ernst* presumption remains intact and that the "indemnify and hold harmless" language in Paragraph 21 encompasses an obligation to reimburse Continental for attorney's fees and defense costs incurred in defending against any *Crouch* Action claims resulting from or arising out of the acts or omissions of Jewell Aircraft, its officers, agents, representatives, servants, or employees. Summary judgment will not be entered in defendant's favor on this ground.

## VI.     Whether the Agreement Reaches Vicarious Liability Claims.

Defendant's next summary judgment argument is that it is entitled to Rule 56 relief because the indemnity provision in Paragraph 21 "did not intend to provide for the defense or indemnification of agency or vicarious liability claims" (doc. 92, at 17) and, even if it did, no vicarious liability claim was ever brought against Continental in the *Crouch* Action (*id.* at 19). The problem with this contention is that part one conflicts with the plain language of the Agreement and part two disregards record facts contrary to defendant's position.

Despite Jewell Aircraft's repeated efforts in its summary judgment filings to complicate, obfuscate and rewrite it, Paragraph 21 is straightforward. Again, it provides in relevant part that Jewell Aircraft "agrees to indemnify and hold TCM harmless from and against all claims, demands, obligations and liabilities … to the extent that such claims, demands, obligations or liabilities have resulted from or arisen out of any act or omission of Distributor, its officers, agents, representatives, servants, or employees." (Doc. 92, Exh. A, ¶ 21.) Under well-settled law, indemnity agreements are interpreted and construed as written, giving force and effect to the parties' intent as reflected in the plain language of the agreement. *See, e.g., Holcim*, 38 So.3d at 728 ("Under long-standing Alabama law, contracts should be construed as written … and that policy generally applies to indemnity contracts.") (citations and internal quotation marks

omitted).[19]  The plain language of Paragraph 21 reflects that if a claim were brought against Continental, and if that claim arose from Jewell Aircraft's acts or omissions, then Jewell Aircraft would have a contractual duty to indemnify Continental.  Nothing in that contractual language would carve out an exception for claims of vicarious liability; to the contrary, such claims appear to lie within the heartland of that indemnity provision.  After all, if a claim were brought against Continental arising from Jewell Aircraft's acts or omissions (*i.e.*, a claim seeking to hold Continental liable for something Jewell Aircraft did or did not do), it would (a) be a vicarious liability claim, and (b) fall squarely within the scope of the indemnity clause as worded in Paragraph 21.  Defendant's tortured, convoluted argument to the contrary would have the Court ignore the clear language of the indemnity agreement and replace it with a new, more restrictive provision that is more to Jewell Aircraft's liking.  This the Court cannot and will not do.[20]

---

[19]    *See also Voggenthaler v. Maryland Square LLC*, 724 F.3d 1050 (9th Cir. 2013) ("Under Nevada law, indemnification provisions are interpreted like any other contract provision, according to normal contract rules."); *Cambridge Integrated*, 697 F.3d at 254 ("Under Louisiana law, indemnity provisions are construed in accordance with general rules governing contract interpretation.  When the terms of a contract are unambiguous and lead to no absurd consequences, we interpret them as a matter of law.") (citation omitted); *Danbury Bldgs., Inc. v. Union Carbide Corp.*, --- F. Supp.2d ----, 2013 WL 3755754, *8 (D. Conn. July 15, 2013) ("As a general rule, contractual indemnification claims that are based on written agreements are construed in accordance with the principles of contract law.") (citations omitted); *MNW, LLC v. Mega Auto Group, Inc.*, 884 F. Supp.2d 740, 755 (N.D. Ind. 2012) ("Indiana courts have recognized that indemnity agreements are a form of contract and, as such, are construed according to the rules and principles of the law of contracts.") (citation omitted).

[20]    Symptomatic of Jewell Aircraft's framing of summary judgment arguments in terms of wishful thinking rather than contractual language is its assertion that "the focus [of Paragraph 21] is what proximately caused the plaintiff's accident."  (Doc. 92, at 17 n.16.)  In other words, defendant would have this Court find that the indemnity provision in Paragraph 21 gives rise to an indemnity obligation in the *Crouch* Action only if Jewell Aircraft proximately caused the airplane crash.  Neither the language of the Agreement nor the *Steed* case (which defendant once again cites) would support such an unvarnished revision of the indemnity provision to which Jewell Aircraft agreed.  Nor does Jewell Aircraft strengthen its position in any respect by referring to another provision of the Agreement specifying that "Distributor is not authorized to act as agent or representative of TCM."  (Doc. 92, Exh. A, ¶ 19.)  Defendant mixes apples and oranges.  Just because the Agreement did not confer agency status on Jewell Aircraft does not mean that a third party might not bring a claim against Continental for something Jewell Aircraft did or failed to do.  In that event, the plain language of Paragraph 21 imposes an indemnification obligation on Jewell Aircraft, regardless of whether it was legally or contractually the agent of Continental or not.  And defendant's claim that "vicarious liability was (Continued)

Jewell Aircraft's argument does not improve with its assertion that, in the *Crouch* Action, "[t]here was no 'claim' for negligent installation or vicarious liability which TCM was forced to defend." (Doc. 92, at 20.) This statement cannot be credited on summary judgment, given the clear evidence in the record that the *Crouch* Action did in fact include a claim for negligent installation of the magneto, in which the *Crouch* plaintiffs sought to hold Continental liable for alleged acts or omissions of Jewell Aircraft. A court order entered in the *Crouch* Action clearly stated that Judge DuBose "will also instruct on the Plaintiffs' claim against TCM for negligent installation of the magneto by John Jewell and/or Jewell Aircraft, Inc. (Jewell)." (Doc. 45, Exh. H, at 1.) In that same Order, Judge DuBose expressly "finds the following claim is also at issue: 4) Negligent installation of the magneto  The plaintiffs claim that Jewell acted as TCM's agent at the time he installed the magneto on Crouch's aircraft and TCM is liable for Jewell's negligent installation." (*Id.*) On summary judgment, the record facts are taken in the light most favorable to the nonmovant. Accordingly, this Order, in and of itself, is an exhibit defeating defendant's summary judgment argument that "there was no 'claim' for negligent installation or vicarious liability" in the *Crouch* Action.[21]

_____

not one of the 'claims, demands, obligations or liabilities' within the meaning of" Paragraph 21's indemnity provision is devoid of textual support in the Agreement. (Doc. 92, at 21.) Nothing in the broad contract language about "claims, demands, obligations or liabilities … [that have] resulted from or arisen out of any act or omission of Distributor" would reasonably support an inference that claims for vicarious liability were excluded from its scope. Defendant's repeated attempts to argue that Paragraph 21 meant something other than what it said based on a selective sampling of statements made by Continental during the *Crouch* Action must fail. Parol evidence is inadmissible to establish intent of an unambiguous contract, and Jewell Aircraft has identified no ambiguity that might authorize use of extrinsic evidence to show intent. *See, e.g., Marriott Int'l, Inc. v. deCelle*, 722 So.2d 760, 762 (Ala. 1998) ("The general rule of contract law provides that if a written contract exists, the rights of the parties are controlled by that contract and parol evidence is not admissible to contradict, vary, add to, or subtract from its terms. … However, if the contract is ambiguous, parol or extrinsic evidence will be allowed to clarify the contract.").

[21]    The Court understands that defendant believes Judge DuBose's ruling was factually incorrect and that the negligent installation claim she identified in that ruling actually did not exist. We have gone down this road before. (*See* doc. 56.) On summary judgment, however, that ruling demonstrates the existence of (at a minimum) a genuine issue of material fact as to whether a negligent installation claim seeking to hold Continental liable for the acts or omissions of Jewell Aircraft was actually raised in the *Crouch* Action. The presiding judge (who was in an optimal position to identify the triable claims in the *Crouch* Action) obviously believed (Continued)

For all of these reasons, the Motion for Summary Judgment is **denied** insofar as it is predicated on a theory that "vicarious liability was not covered or proven." (Doc. 92, at 17.)[22]

## VII. Defendant's Estoppel Argument.

Defendant also moves for summary judgment pursuant to the doctrine of judicial estoppel. The essence of Jewell Aircraft's argument is that Continental took the position in the *Crouch* Action that no vicarious liability claims were asserted against it by the *Crouch* plaintiffs, only to reverse course in this litigation by insisting that there were indeed such claims.[23] This inconsistency lies at the heart of Jewell Aircraft's judicial estoppel argument.

──────────────────

that it was because she made an express written determination to that effect. That record evidence precludes entry of summary judgment in Jewell Aircraft's favor on the theory that no such claim existed. Nothing herein would preclude Jewell Aircraft from arguing at trial that Judge DuBose got it wrong, but Judge DuBose's order is evidence as to the factual question of whether a negligent installation claim arising from acts or omissions of Jewell Aircraft, its agents or representatives was brought and litigated in the *Crouch* Action. Such evidence precludes entry of summary judgment in defendant's favor.

[22]    In so ruling, the Court does not credit Jewell Aircraft's alternative argument that allowing Continental to pursue an indemnity claim for the negligent installation claim "would be tantamount to requiring JA to indemnify TCM for TCM's wrongs." (Doc. 92, at 25.) As the Court has observed in this and previous orders, the negligent installation claim asserted in the *Crouch* Action did not allege wrongdoing by Continental, but rather was predicated on the theory that Continental was liable for negligent installation of the magneto by John Jewell and/or Jewell Aircraft, Inc. Because the negligent installation claim was not one in which the *Crouch* plaintiffs sought to hold Continental liable for its own negligence (but instead for the negligence of Jewell Aircraft), defendant's argument that Continental is attempting in this action to obtain indemnity for its own negligence is factually and legally incorrect. As discussed at length *supra*, Jewell Aircraft's responsibility to reimburse Continental for attorney's fees and defense costs relating to the negligent installation claim arose when the claim was brought, and does not turn on whether the *Crouch* plaintiffs successfully proved their claim. At any rate, defendant has made no satisfactory legal showing that, under Alabama law, a duty to reimburse attorney's fees and costs under Paragraph 21 would be triggered only if the *Crouch* plaintiffs proved their vicarious liability claim against Continental and only if the jury made specific findings of an agency relationship between Continental and Jewell Aircraft.

[23]    Although Continental contests the point, the inconsistency is laid bare in uncontroverted record materials. Specifically, the record shows that in the *Crouch* Action, Continental advanced the following position in its Third Motion in Limine: "Plaintiffs have and will improperly argue that the Agreement renders Continental Motors vicariously liable for the acts or omissions of [John Jewell and/or Jewell Aircraft, Inc.]. … Plaintiffs are initially precluded from introducing arguments or evidence pertaining to a purported agency relationship (Continued)

"The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (citation and internal quotation marks omitted); *see also City of Riviera Beach v. That Certain Unnamed Gray, Two Story Vessel Approximately Fifty-Seven Feet in Length*, 649 F.3d 1259, 1273 (11th Cir. 2011) ("Judicial estoppel is designed to prevent parties from making a mockery of justice by inconsistent pleadings.") (citation and internal quotation marks omitted).  The decision to invoke this equitable doctrine is vested in the discretion of the trial court to safeguard the integrity of the judicial process. *See Stephens v. Tolbert*, 471 F.3d 1173, 1177 (11th Cir. 2006); *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1335 (11th Cir. 2005).

Both parties rely on Alabama's law of judicial estoppel in support of their respective positions. The Alabama Supreme Court recognizes that "an essential element of judicial estoppel" is that "the party attacked for asserting an inconsistent position must have been successful in the prior proceeding so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first court or the second court was misled." *Jefferson County Com'n v. Edwards*, 49 So.3d 685, 689 (Ala. 2010); *see also Selzer Automotive, L.P. v. Cumberland Plastic Systems, LLC*, 70 So.3d 272, 276 (Ala. 2010) (to trigger judicial estoppel, there must be a prior judicial proceeding "in which a party ***successfully asserted a position*** that is … contrary to the position asserted by that party in a later proceeding") (emphasis added); *Line v. Ventura*, 38 So.3d 1, 12 n.7 (Ala. 2009) ("Any sort of judicial estoppel or waiver in the context of a prior inconsistent argument is available only when an argument has been made by the parties involved and ***relied upon by the courts***.") (emphasis added); *Bowers v. Wal-Mart Stores, Inc.*, 827 So.2d 63, 67 n.2 (Ala. 2001) ("Judicial estoppel generally prevents a

---

between CMI and [John Jewell and/or Jewell Aircraft, Inc.] because they did not properly raise such claims in their First Amended Complaint or Pretrial Report." (Doc. 92, Exh. E, at 2-3.)  By contrast, Continental argues in this lawsuit that "CMI did in fact spend much of its time and energy during *Crouch* defending against the vicarious liability or agency cause of action brought by the plaintiffs. … CMI defended claims of vicarious liability and agency from the time of the filing of the *Crouch* Complaint through trial." (Doc. 106, at 17.)  The tension between the position Continental took in the *Crouch* Action and the one it adopts here is unmistakable.

party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (citation omitted).

A critical flaw in Jewell Aircraft's judicial estoppel theory for summary judgment is that Continental was not successful in its assertion in the *Crouch* Action that the *Crouch* plaintiffs had not asserted vicarious liability claims. To be sure, Continental did argue in the *Crouch* Action that no claims had been pleaded "that Continental Motors is responsible for [John Jewell and/or Jewell Aircraft, Inc.] in doing the overhaul of Crouch's engine" and specifically requested that the jury "be instruct[ed] that Continental Motors is not liable or responsible for the actions of [John Jewell and/or Jewell Aircraft, Inc.]." (Doc. 92, Exh. E, at 3, 5.) But Judge DuBose did not accept or embrace Continental's position; to the contrary, she ruled that the *Crouch* plaintiffs had brought a claim against Continental for negligent installation of the magneto, predicated on the theory that "[John Jewell and/or Jewell Aircraft, Inc.] acted as TCM's agent at the time he installed the magneto on Crouch's aircraft and TCM is liable for [John Jewell's and/or Jewell Aircraft, Inc.'s] negligent installation." (Doc. 45, Exh. H, at 1.) Thus, Continental's prior position (that no such vicarious liability / agency claim had been brought against it) was expressly rejected in the *Crouch* Action. In light of that ruling, the "success" element of judicial estoppel is not present.[24] As a result, Continental was not barred by principles of judicial estoppel from asserting an inconsistent position to its rejected argument in the *Crouch* Action, because doing so created no reasonable likelihood that either this Court or the Court in the *Crouch* Action would be misled.[25]

---

[24] In arguing otherwise, Jewell Aircraft reasons that this element is satisfied because Continental "was successful in the lawsuit, having won at trial." (Doc. 92, at 27.) As the foregoing authorities demonstrate, however, the relevant measure of success is not whether the party won the prior case, but whether the litigant was successful in advancing the prior inconsistent position. Continental unquestionably was not; therefore, Jewell Aircraft's assertion that Continental is subject to judicial estoppel because it "won at trial" misapplies the doctrine and answers the wrong question.

[25] Another way to think of it is as follows: Continental urged Judge DuBose to find that there were no vicarious liability claims at issue in the *Crouch* Action. She disagreed. In light of her ruling, it would serve no equitable purpose (and frankly, make no sense) to require Continental to continue to adhere slavishly to that rejected argument in this lawsuit. The tribunal in the *Crouch* Action having found that there were vicarious liability claims at issue therein, Continental's alteration of its position in this lawsuit to conform to that judicial determination is in no way inequitable, dishonest, confusing or misleading. If anything, the confusing/misleading (Continued)

For all of these reasons, the doctrine of judicial estoppel has no application here, and defendant's Motion for Summary Judgment is **denied** insofar as it maintains otherwise.

## VIII.  Other Issues.

At the end of its principal brief, Jewell Aircraft rattles off three additional grounds for summary judgment in rapid-fire succession.  (Doc. 92, at 28-29.)

First, Jewell Aircraft argues that summary judgment is appropriate because Continental has not proven that "it incurred fees and costs in defending a negligent installation claim" as opposed to the *Crouch* plaintiffs' other claims directed at Continental's own alleged wrongdoing.  (Doc. 92, at 28.)  This aspect of defendant's Rule 56 Motion purports to hinge on a separate Motion to Strike (doc. 79) in which Jewell Aircraft seeks to exclude the report of Continental expert Mack Binion.  That Motion to Strike remains pending at this time.  Should it be granted, then Jewell Aircraft may renew its Motion for Summary Judgment solely on the issue of the adequacy of proof of allocation of attorney's fees and expenses between the indemnified claim and the other claims in the *Crouch* Action.  For now, however, the Binion report remains in play, and Jewell Aircraft has failed to address other evidence produced by Continental on the subject of attorney's fees and expenses.  On this record and this showing, the Court cannot certify today that Continental will be unable to link any attorney's fees and expenses in the *Crouch* action to the negligent installation claim for which Jewell Aircraft may owe an indemnification obligation to Continental under the Product Support Agreement.  Accordingly, this facet of defendant's Motion for Summary Judgment is **denied**.

Second, Jewell Aircraft requests that temporal boundaries be set on the interval for which Continental can obtain reimbursement of attorney's fees and costs of defense as to the negligent installation claim in the *Crouch* Action.  The Court cannot agree that the indemnity clock began running in April 2010 when "faulty demand" was made because (as addressed in detail, *supra*) Continental was not laboring under a formal demand requirement.  Nor is the Court persuaded by Jewell Aircraft's alternative argument that its indemnification obligation did not begin until Judge DuBose's Order dated July 6, 2011, in which she explained that the jury would be

---

position to take would be that asserted by Jewell Aircraft herein, to-wit: that there were no vicarious liability claims litigated in the *Crouch* Action, despite Judge DuBose's unequivocal ruling to the contrary.

instructed on the negligent installation claim. Far from conjuring a brand-new cause of action out of thin air, the July 6 Order merely recognized a claim that (in Judge DuBose's view) had always been part of the *Crouch* Action. For summary judgment purposes, at least, that ruling did not create a new cause of action that had never previously been joined in that litigation; therefore, the date of entry of that order cannot represent the start date for Jewell Aircraft's indemnity obligation. Defendant's argument fares better as to the cutoff for its contractual duty to indemnify Continental. The record reflects that on the fourteenth day of trial, August 4, 2011, Judge DuBose granted Continental's Rule 50 motion as to the *Crouch* plaintiffs' agency claim (*i.e.*, the negligent installation cause of action). (Doc. 106, Exh. M, at 3555-57.) Again, this Court has previously ruled that any indemnity obligation owed by Jewell Aircraft is limited under Alabama law to the negligent installation claim. Because the trial court granted judgment as a matter of law to Continental on that claim (and because the *Crouch* plaintiffs never appealed or otherwise litigated that claim any further thereafter), any contractual duty that Jewell Aircraft owed to indemnify and hold Continental harmless in the *Crouch* Action terminated as of that August 4, 2011 ruling, and Continental is barred in this action from recovering attorney's fees or defense costs incurred in the *Crouch* Action after that ruling. In this very limited respect, the Motion for Summary Judgment is **granted**.

Third, Jewell Aircraft requests that this Court grant it summary judgment on the Counterclaim by declaring Jewell Aircraft a "prevailing party" and award it all costs and reasonable attorney's fees it has incurred in the defense of this action.[26] Nothing in this Order would justify a judicial determination at this time that Jewell Aircraft is the "prevailing party" in this fee litigation for purposes of its fees-on-fees Counterclaim; therefore, the Motion for Summary Judgment is **denied** as to Jewell Aircraft's Counterclaim for costs and reasonable attorney's fees.

---

[26] This argument rests on Paragraph 40 of the Product Support Agreement, in which Continental and Jewell Aircraft agreed as follows: "In the event of a litigation or arbitration between TCM and Distributor, the non-prevailing party, as determined by the court or arbitrator, shall pay to the prevailing party all costs and reasonable attorneys' fees incurred by the prevailing party including, but not limited to, those costs and fees related to any trial, arbitration, appellate, bankruptcy, insolvency, and administrative proceedings." (Doc. 92, Exh. A, ¶ 40.)

**IX.    Conclusion.**

For all of the foregoing reasons, defendant Jewell Aircraft, Inc.'s Motion for Summary Judgment (doc. 91) is **granted in part**, and **denied in part**.  The Motion is **granted** insofar as Jewell Aircraft argues that it owes no contractual indemnity obligations to Continental in the *Crouch* Action subsequent to August 4, 2011, when the District Court entered judgment as a matter of law in Continental's favor on the negligent installation claim.  In all other respects, the Motion for Summary Judgment is **denied**.

DONE and ORDERED this 1st day of October, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE