IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CONTINENTAL MOTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 12-0221-WS-C |
| | ) | |
| JEWELL AIRCRAFT, INC., *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This matter comes before the Court on defendant Jewell Aircraft's Motion to Strike Expert Report of Mack B. Binion and Motion to Prohibit Mr. Binion from Testifying as a Witness (doc. 79). The Motion has been briefed and is now ripe.[1]

**I.    Relevant Background.**

   *A.    Procedural History.*

Following an aviation accident in Kentucky in 2007, Continental Motors, Inc. ("Continental") was sued by the injured occupants of the aircraft (the "*Crouch* Action"). The plaintiffs in the *Crouch* Action maintained that the crash was caused by a defective magneto manufactured by Continental and installed by a man named John Jewell, who was (among other roles and other capacities) the president of Jewell Aircraft, Inc. ("Jewell Aircraft"). Jewell Aircraft was a Continental distributor, and the two entities had entered into a Product Support Agreement (the "Agreement") in January 2005. That Agreement contained a clause in which Jewell Aircraft agreed to "indemnify and hold [Continental] harmless from and against all claims, demands, obligations and liabilities … to the extent that such claims, demands,

---

[1]    Also included in defendant's Motion is a Motion to Extend Discovery Deadlines; however, that motion is **moot**, given intervening developments including (most notably) the extension order entered on March 13, 2013 and the subsequent stay of all discovery entered on May 3, 2013. (*See* docs. 82, 107.)

obligations or liabilities have resulted from or arisen out of any act or omission of [Jewell Aircraft], its officers, agents, representatives, servants, or employees." (Doc. 92, Exh. A, ¶ 21.)

The *Crouch* Action proceeded to trial in this District Court in the summer of 2011. Shortly before trial, Judge DuBose entered rulings delineating four triable claims brought by the *Crouch* plaintiffs, to-wit: (i) a claim of strict liability alleging that Continental's magneto was an unreasonably dangerous product; (ii) a claim of breach of warranty alleging that Continental's magneto was neither merchantable nor fit for its intended use; (iii) a claim of negligence alleging that Continental breached a duty to warn end users that its magneto was unsafe; and (iv) a claim of negligent installation alleging that Continental was liable for negligent installation of the magneto by John Jewell and/or Jewell Aircraft, Inc. On the 14th day of trial in the *Crouch* Action, Judge DuBose granted Continental's motion for judgment as a matter of law on the negligent installation claim, thereby eliminating the only vicarious liability claim while retaining the causes of action seeking to hold Continental liable for its own alleged wrongdoing with respect to the magneto it had designed and manufactured. The remaining three claims were submitted to the jury, which returned a verdict in Continental's favor. That verdict was affirmed on appeal by the Eleventh Circuit earlier this year.

This litigation is a spinoff of the *Crouch* Action, and constitutes Continental's attempt to recoup more than $2 million in attorney's fees and costs it expended in defending against the *Crouch* Action. Continental's theory is that Jewell Aircraft is contractually responsible for reimbursing those attorney's fees and costs under the Agreement's indemnity provision. This Court has written extensively to the legal effect and application of that indemnity provision under Alabama law on multiple occasions. Most recently, the undersigned entered an Order (doc. 109) on October 1, 2013, denying (with one exception) Jewell Aircraft's motion for summary judgment on liability issues relating to that indemnity provision. A previous Order (doc. 23) entered on July 30, 2012 and partially granting Jewell Aircraft's Rule 12(b)(6) motion, is of central importance to the present Motion to Strike, and will therefore be examined in some detail *infra*.

### B. *The Binion Expert Report.*

Should this action be litigated to trial, Continental will bear the burden of establishing its damages. In particular, Continental will be required to prove that the subject attorney's fees and costs for which it seeks reimbursement are both (i) within the scope of the indemnity provision

of the Agreement, and (ii) otherwise recoverable under Alabama law.  Much of the parties' disagreement underlying the Motion to Strike proceeds from misapprehension or oversight of these fundamental, separate requirements.

One avenue that Continental identifies as a means of satisfying its burden of proof as to apportionment of damages is the expert testimony of Mack B. Binion, Esq., whose 19-page expert report was filed on March 1, 2013 and is the subject of Jewell Aircraft's Motion to Strike. Binion's report sets forth his expert opinion that the hourly rates charged by Continental's lawyers in the *Crouch* Action "were and are reasonable; particularly given all aspects of the retention and the ability, experience and background of the attorneys involved in the defense of the Underlying Case." (Doc. 77, Exh. 2, at 4.) With regard to the overall level of attorney's fees and costs incurred by Continental in defense of the *Crouch* Action, Binion opines that, *inter alia*, "the Fees were and are not excessive; the time and labor required was necessary; the involved attorneys possessed the requisite skill to perform the legal services properly," and so on through the remaining factors established by the Alabama Supreme Court for assessing reasonableness of attorney's fees. (*Id.* at 11-12.)[2]

With respect to apportionment of fees between the negligent installation claim (as to which this Court has ruled that attorney's fees may be recoverable under Alabama law and the applicable Agreement) and the strict liability/breach of warranty/failure to warn claims (as to which this Court has ruled that attorney's fees are not recoverable under Alabama law), Binion offers a series of expert opinions that lie at the heart of Jewell Aircraft's Motion to Strike. In particular, Binion opines that "Plaintiffs' causation theory(s), coupled with the precious few undisputed facts, made it virtually impossible to separate their claims against CMI and Jewell,

---

[2] Jewell Aircraft's Motion to Strike requests that Binion's expert report be stricken in its entirety and that Binion be excluded from testifying altogether; however, the sweeping, all-encompassing nature of this request amounts to substantial overreaching.  After all, defendant does not attack Binion's proffered opinions concerning such matters as reasonableness of hourly rates, necessity of time and labor spent, or reasonableness of total fees expended in the *Crouch* Action.  These aspects of Binion's opinion simply have not been challenged; indeed, the Motion to Strike does not advance any possible justification for excluding Binion's testimony on those topics.  Whatever else may be said, then, nothing in the Motion to Strike would in any way trammel Binion's ability to opine to the jury that the hourly rates were reasonable, that the total number of hours expended by Continental's counsel in defending against the *Crouch* Action were reasonably necessary, that the costs and expenses were reasonably incurred, and so on.

i.e., negligent installation, and their other claims against CMI, i.e., warranty, strict liability, etc. To the contrary, Plaintiffs' factual and legal theories all led to Jewell's Repair Shop in Holly Springs, Mississippi and Jewell's overhaul of plane's engine in March – April, 2005." (Doc. 77, Exh. 2, at 13-14.) In Binion's view, all of the *Crouch* plaintiffs' claims (regardless of how they were nominally pled, labeled, and tried) amounted to "combined and concurring" claims, such that "the alleged defectiveness of the magneto was a combination of acts and omissions of Jewell … and related allegations against CMI." (*Id.* at 14-15.) Binion's opinion, then, is that even though the *Crouch* plaintiffs brought claims against Continental alleging that Continental had defectively designed the magneto and failed to warn consumers about its unreasonably dangerous condition, those claims actually hinged on theories combining Jewell Aircraft's purported wrongdoing in installing the magneto improperly and Continental's purported wrongdoing in failing to design and manufacture the magneto to withstand the effects of Jewell Aircraft's poor installation. (*Id.*) Proceeding from this "combined and concurring" hypothesis, Binion opines that "a qualified informed attorney could correctly contend that every dollar spent in defense of the case resulted from or arose out of Plaintiffs' allegations as to the activities of Jewell." (*Id.* at 16.)

Binion goes on to acknowledge U.S. Supreme Court precedent favoring "some deduction" from attorney's fees in "messy" or "untidy" complex litigation, and identifies a "common sense factor" (taking into account the background, experience and capabilities of counsel on both sides of the *Crouch* Action) from applicable precedents to use as a guide for making that deduction. (*Id.*) After considering those facts and reasoning that both sides in *Crouch* were incentivized to litigate the case efficiently, Binion concludes that "a fifteen percent (15%) reduction from the Fees incurred … is appropriate; the 15% being attributable to possible inefficiencies and the very few, if any, matters arguably not resulting from, not arising out of or unrelated to Plaintiffs' allegations as to the acts and omissions of Jewell." (*Id.* at 16-17.) On that basis, Binion recites his ultimate opinion that "85% of the Fees … incurred by CMI in connection with the Crouch case and its trial and appeal ***resulted from Jewell's actions and omissions during the overhaul, including the installation of the magneto, and/or related to***

***CMI's defense of the negligent installation claim*** and that such Fee(s) were in all respects reasonable and necessary in CMI's defense of Plaintiffs' claims." (*Id.* at 17 (emphasis added).)[3]

Without waiting to take Binion's deposition, Jewell Aircraft exacerbated the parties' voluminous pretrial motion practice just six days after the report was filed, by moving to strike the Binion expert report and to exclude him from testifying. The crux of the Motion to Strike is that certain of Binion's opinions (*i.e.*, that 85% of the attorney's fees and costs incurred by Continental in the *Crouch* Action resulted from John Jewell's actions in installing the magneto and/or Continental's defense of the negligent installation claim) are irreconcilable with both previous rulings and Alabama law, as well as fundamental *Daubert* expert admissibility principles.

**II.     Analysis.**

   *A.     The Significance of the July 30, 2012 Order.*

After careful review of the 60+ pages of briefing about the admissibility of Binion's expert report, the Court is struck by the fundamental disconnect between the parties' positions. The critical point of divergence in their respective arguments is the Order (doc. 23) entered by this Court on July 30, 2012, granting in part Jewell Aircraft's Rule 12(b)(6) Motion. Defendant insists that the July 30 Order set forth principles to which plaintiff's experts must adhere, while plaintiff would disregard, circumvent, re-litigate or re-imagine the July 30 Order at this juncture. To resolve these issues, we must first recap the original briefing that culminated in the July 30 Order.

In its Rule 12(b)(6) Motion, Jewell Aircraft argued, *inter alia*, that Alabama law imposed constraints on its indemnity obligations to Continental under the Agreement (which by its terms was governed by Alabama law). In particular, Jewell Aircraft relied on *Stone Bldg. Co. v. Star Elec. Contractors*, 796 So.2d 1076 (Ala. 2000), a contractual indemnity case in which the Alabama Supreme Court, citing earlier authorities, wrote the following:

---

    [3]    In Binion's report, "Jewell" is a defined term that means "John Jewell" individually, not Jewell Aircraft, Inc. (*Id.* at 6.) Because Jewell Aircraft's contractual indemnity obligation attached to the acts or omissions of itself, its officers, agents, representatives, servants or employees, there was no indemnity duty unless John Jewell was acting in one or more of these capacities. What kind of showing Continental must make on this point (and whether that showing is satisfied only by proof of the actual relationship or whether the manner which the claim was formulated is dispositive) is a topic beyond the scope of this Order.

> "The indemnification of attorney fees is … subject to certain limitations. … [T]here is considerable authority holding that an indemnitee is precluded from recovering attorney fees where the indemnitee has been required to defend accusations which encompass his own separate wrongful acts. … In other words, indemnification, including attorney fees, is allowed where one is defending claims predicated solely upon another defendant's negligence; however, where one is defending for his own benefit, an award of attorney fees will not be allowed."

*Stone*, 796 So.2d at 1092 (citations omitted). From this language, Jewell Aircraft reasoned that it owed no indemnity obligation to Continental for attorney's fees accrued in defending against the *Crouch* Action claims for strict liability, negligent failure to warn, and breach of warranty, because those claims alleged wrongdoing by Continental (as opposed to vicarious liability for the conduct of Jewell Aircraft). In response, Continental did not dispute that *Stone* accurately reflects Alabama law. Continental did not argue that this passage from *Stone* is inapplicable to contractual indemnity cases. Instead, Continental's Rule 12(b)(6) stance was one of near-capitulation, as it acknowledged that "it may eventually be determined that CMI is not entitled to recover the fees and expenses incurred solely in its defense of the claims exclusive to CMI. However, there should be no question under Alabama law that CMI is entitled to recover the fees and expenses related to the agency/Negligent Installation claim." (Doc. 10, at 44 (footnote omitted).)[4]

This issue having been thus framed by the parties, the undersigned addressed it in the July 30 Order by accepting and adopting *Stone*'s language as an accurate characterization of Alabama law's limitations on contractual indemnity with respect to recovery of attorney's fees. The July 30 Order recognized that *Stone* prohibited indemnification of attorney's fees accrued by an indemnitee in defending against claims based on its own alleged wrongdoing, and concluded that no factual determinations were needed to assess whether the strict liability / failure to warn /

---

[4] In an accompanying footnote, Continental added a disclaimer clarifying that it "is not conceding that it is barred from recovering all of its costs and fees incurred in the Crouch/ Hudson case. Indeed, if it is determined that but for the negligence of the Defendants there would have no [*sic*] accident and no claims against CMI first place [*sic*], then Defendants should have to indemnify CMI for amounts that it would have otherwise not incurred." (Doc. 10, at 44 n.19.) The footnote did not elaborate on this caveat, much less identify any means of reconciling it with *Stone* or Alabama law. Yet this was the sum total of Continental's argument against dismissal of its claims for indemnity against Jewell Aircraft with regard to the *Crouch* Action claims alleging wrongdoing by Continental itself (*i.e.*, the strict liability, negligent failure to warn, breach of warranty causes of action).

breach of warranty claims against Continental in the *Crouch* Action fell within the scope of *Stone*'s prohibition. In that regard, the July 30 Order reasoned:

> "Without question, those claims did indeed encompass Continental's own allegedly wrongful acts, and Continental was defending those claims for its own benefit. Thus, *Stone* clearly forbids Continental from recovering its attorney's fees as to those claims. Nor does Continental suggest that *Stone* is not good law or that it is distinguishable in any meaningful way. Simply put, there is no reasonable basis for deeming the *Crouch* Action claims that reached a jury to be amenable to indemnification of attorney's fees under Alabama law."

(Doc. 23, at 26.)[5]

The ultimate conclusion of the July 30 Order was that Jewell Aircraft's Rule 12(b)(6) Motion was "**granted** as to the portion of Counts I and II in which plaintiff seeks recovery of attorney's fees and other costs incurred in defense of the negligence, breach of warranty and strict liability claims in the underlying action, and those aspects of Counts I and II are **dismissed** for failure to state an actionable claim for contractual indemnity under Alabama law." (*Id.* at 28, ¶ 3.) The July 30 Order clarified that this action would proceed against Jewell Aircraft as to "the portions of Counts I and II seeking indemnity of attorney's fees and defense costs incurred by plaintiff in defending against the negligent installation cause of action in the underlying case." (*Id.* at 28, ¶ 6.)

In its Motion to Strike, Jewell Aircraft correctly argues that the Binion expert report conflicts with these clear rulings in the July 30 Order. Again, Binion opines that "85% of the Fees … incurred by CMI in connection with the Crouch case and its trial and appeal resulted from Jewell's actions and omissions during the overhaul … and/or related to CMI's defense of the negligent installation claim." (Doc. 77, Exh. 2, at 17.)[6] As the July 30 Order makes clear,

---

[5] The July 30 Order also rejected Continental's unsupported suggestion in briefing the Rule 12(b)(6) motion that if Jewell Aircraft's negligence was the but/for cause of the airplane crash, then Jewell Aircraft should be liable for 100% of Continental's attorney's fees. On that point, the July 30 Order noted that Continental had provided no authority for such a "but/for causation" exception to the rule in *Stone*, and that negligent failure to warn, breach of warranty, and strict liability claims in the *Crouch* Action unquestionably encompassed Continental's own separate allegedly wrongful acts (*i.e.*, defects in the magneto's manufacture and design), such that *Stone* would prohibit an award of attorney's fees via Continental's indemnity claim relating to those matters. (*See* doc. 23, at 27 n.29.)

[6] Similarly problematic is Binion's opinion that "every dollar spent in defense of the case resulted from or arose out of Plaintiffs' allegations as to the activities of Jewell." (Doc.
(Continued)

however, there is no disjunctive "and/or" formulation for indemnification of attorney's fees in this case. These requirements are cumulative, not alternative. In other words, for Continental's attorney's fees to be reimbursable, they must (i) fall within the scope of the indemnity provision of the Agreement (*i.e.*, the "resulted from Jewell's actions and omissions during the overhaul" part of the Binion statement), **AND** (ii) comport with Alabama's limitations on contractual indemnity as set forth in the July 30 Order (*i.e.*, the "related to CMI's defense of the negligent installation claim" part of the Binion statement). Plaintiff must satisfy both the contractual requirement and the Alabama common-law requirement to satisfy its burden of proof. One or the other will not suffice. As the Binion report adopts an either/or rather than a both/and formulation of these requirements, his opinion is in derogation of this Court's ruling on the Rule 12(b)(6) Motion.[7] This same principle defeats Continental's defense of Binion's opinion as

---

77, Exh. 2, at 16.) Such language may have the virtue of tracking the indemnity clause of the Agreement, but it also disregards the July 30 Order's findings that Alabama law imposes limitations on the recovery of attorney's fees in the contractual indemnity context, above and beyond the contract language.

[7] The deviation of Binion's expert opinion from the July 30 Order and the Alabama Supreme Court's *Stone* opinion (on which the July 30 Order relied) is underscored by the portion of his report in which he reasons that no matter what the *Crouch* plaintiffs called their claims, they all related back to John Jewell's overhaul of the aircraft because the *Crouch* plaintiffs' theory was that Jewell had done bad work in installing the magneto and that Continental's magneto was defective because it could not withstand the stresses created by Jewell's installation errors. (Doc. 77, Exh. 2, at 14-15.) This was Binion's "combined and concurring" rationale, that if all the *Crouch* claims could be tied back to Jewell Aircraft's alleged negligence in some way, then Continental's attorney's fees are reimbursable for all such claims. In so opining, Binion appears to have concerned himself only with fitting those claims within the ambit of the indemnity provision of the Agreement, with no regard for the additional prerequisite that such claims satisfy Alabama's constraints on contractual indemnity as set forth in *Stone* and the July 30 Order. As the July 30 Order observed, the Alabama Supreme Court unequivocally specified that "indemnification, including attorney fees, is allowed where one is defending claims predicated solely upon another defendant's negligence; however, where one is defending for his own benefit, an award of attorney fees will not be allowed." *Stone*, 796 So.2d at 1092 (citations omitted). Under Binion's "combined and concurring" theory, Continental was defending the negligence/breach of warranty/strict liability claims in the *Crouch* Action both for its own benefit and to defend against Jewell Aircraft's wrongdoing. But *Stone* disallows attorney's fees for claims that "encompass [the indemnitee's] own separate wrongful acts" or claims in which the indemnitee "is defending for his own benefit." Even if Binion's "combined and concurring" theory were accepted to link the *Crouch* claims to Jewell Aircraft's acts and omissions, those
(Continued)

"track[ing] the operative language from the indemnity clause of the Product Support Agreement." (Doc. 85, at 11.)[8] Pursuant to the July 30 Order, tracking the operative language of the contractual indemnity provision is not enough for attorney's fees to be reimbursable under Alabama law.

Continental's rebuttal to the foregoing as it relates to the pending Motion to Strike is unpersuasive. In its brief, Continental acknowledges the July 30 Order's ruling that "CMI is not entitled to fees and expenses related to its defense of direct allegations or claims." (Doc. 85, at 10.) Yet Continental then devotes some seven pages of its brief to attacking Jewell Aircraft's interpretation of Alabama law, without acknowledging that Jewell Aircraft's arguments on this point are wholly aligned with the July 30 Order. (*See id.* at 20-26.) In particular, Continental now insists that the Alabama Supreme Court in *Stone* misapplied Alabama law by incorrectly importing common-law indemnity concepts into the contractual indemnity context. Of course, this Court's Rule 12(b)(6) ruling rested in large part on that aspect of *Stone*. Without requesting it in so many words, then, Continental is seeking reconsideration of the July 30 Order. Again, the July 30 Order adopted defendant's Rule 12(b)(6) argument that Alabama law (as set forth in the *Stone* opinion) forbids Continental from recovering attorney's fees relating to the defense of accusations encompassing its own alleged wrongful acts, but allows such recovery only for the defense of claims predicated solely on Jewell Aircraft's alleged wrongful acts. If Continental believed that *Stone* did not stand for the proposition for which Jewell Aircraft cited it in briefing the Motion to Dismiss (*i.e.*, that in contractual indemnity cases, Alabama law allows an indemnitee to recover attorney's fees only for the defense of claims predicated solely upon another's negligence, not for the defense of claims for the indemnitee's own benefit), then

---

claims still encompassed Continental's own alleged wrongful acts and Continental was still defending those claims for its own benefit; therefore, indemnification of attorney's fees would not be available under Alabama law. Binion's opinion on this point would shrink Alabama's limitations on contractual indemnity well beyond the parameters implemented in the July 30 Order.

[8] In defending Binion's report, Continental argues at length that Binion's opinions are permissible because they conform to the broad language of the indemnity agreement. (*See* doc. 85, at 25-26.) But Continental overlooks the clear additional constraint imposed by the July 30 Order's interpretation of Alabama law.

Continental had a full and fair opportunity to present that argument at the Rule 12(b)(6) stage. It did not do so, but instead *de facto* acquiesced to defendant's proposed application of *Stone* to the *Crouch* Action claims. Having failed during motion-to-dismiss briefing to advance a previously available argument that *Stone* does not accurately reflect Alabama law in the contractual indemnity context, Continental may not relitigate the question here via backdoor motion for reconsideration raised for the first time some eight months after the July 30 Order was decided. *See, e.g., Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to" the previous ruling).[9]

Nor does Continental improve its position by arguing that Jewell Aircraft's indemnity obligations are established not by reference to the labels used in the *Crouch* plaintiffs' complaint, but by "looking beyond the complaint to the facts presented and case tried by the *Crouch* Plaintiffs." (Doc. 85, at 21 n.13.)[10] To the extent that this contention amounts to another implicit attempt to obtain reconsideration of the July 30 Order, it fails for the reasons described *supra*. Besides, the July 30 Order did not simply look to the *Crouch* plaintiffs' initial pleading to ascertain the extent of Jewell Aircraft's indemnity obligation, but instead looked to Judge DuBose's delineation (just days before trial) of the specific triable claims and causes of action

---

[9] *See also American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) ("There is a significant difference between pointing out errors in a court's decision on grounds that have already been urged before the court and raising altogether new arguments on a motion to amend; if accepted, the latter essentially affords a litigant two bites at the apple.") (citations, footnote, and internal quotation marks omitted); *Garrett v. Stanton*, 2010 WL 320492, *2 (S.D. Ala. Jan. 18, 2010) ("Far too often, litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license … to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a 'do-over' to erase a disappointing outcome. This is improper."); *Dyas v. City of Fairhope*, 2009 WL 5062367, *3 (S.D. Ala. Dec. 23, 2009) ("Motions to reconsider serve a valuable but limited function. They do not exist to permit losing parties to prop up arguments previously made or to inject new ones …. They do not, in short, serve to relieve a party of the consequences of its original, limited presentation.").

[10] The undersigned is well aware of the Alabama authorities on which plaintiff relies for this proposition. *See, e.g., Holcim (US), Inc. v. Ohio Cas. Ins. Co.*, 38 So.3d 722, 730 (Ala. 2009) ("under Alabama law, when determining liability under an indemnity provision, a court may look beyond the complaint in the underlying action to the underlying facts shown by admissible evidence").

that would be litigated at trial in the *Crouch* Action. Those facts (not just the plaintiffs' pleading) confirm that, with the exception of the negligent installation claim, all of the *Crouch* plaintiffs' triable claims against Continental were "accusations which encompass [Continental's] own [alleged] wrongful acts" in defectively designing or manufacturing the magneto, failing to warn of the magneto's unreasonably dangerous character, and breaching warranties of merchantability and fitness. As to those triable claims, they "encompass[ed] [Continental's] own separate wrongful acts," and Continental was unquestionably "defending for [its] own benefit," such that "an award of attorney fees will not be allowed" under *Stone* and Alabama law. *See Stone*, 796 So.2d at 1092. Looking beyond the *Crouch* Complaint would not alter the conclusion set forth in the July 30 Order, nor would it enable Continental to obtain indemnity for attorney's fees incurred in defending claims for its own benefit predicated on its own alleged wrongdoing.[11]

The bottom line is this: Binion's expert report evaluates recoverability of attorney's fees and defense costs in a manner that conflicts with the July 30 Order. He posits that Continental's fees and costs incurred in the *Crouch* Action may be reimbursed via indemnity as long as they resulted from Jewell Aircraft's acts or omissions, and that all defense costs associated with the strict liability / breach of warranty / negligent failure to warn claims alleging Continental's own wrongdoing are recoverable as long as those claims can somehow be traced back to the "combined and concurring" fault of Jewell Aircraft. As that reasoning is fundamentally incompatible with this Court's ruling on the Rule 12(b)(6) Motion, and as any attempt by Continental at this time to relitigate the determination of Alabama law undergirding that ruling based on previously available (but unasserted) arguments would be improper, Binion's expert report cannot stand in its present form. Accordingly, he will not be allowed to present opinions to the jury that call for reimbursement of costs of defense for any claim encompassing

---

[11] To the extent that Continental argues that the alleged lack of proof of its wrongdoing at the *Crouch* trial means that it is entitled to indemnity on all of its claims, Continental is trying to have it both ways. As Continental itself recognized in summary judgment briefing, an indemnitee's right to recover defense costs is not fixed by the merits of the underlying claims. (*See* doc. 109, at 14-16.) Thus, the *Crouch* plaintiffs' lack of success against Continental at trial (as to claims in which they sought to hold Continental liable for its own alleged wrongdoing in making a defective magneto) neither expands nor shrinks Jewell Aircraft's indemnity obligations for attorney's fees under Alabama law or the Agreement.

Continental's own acts as long as such claim may plausibly be said to have a direct or indirect logical nexus to something Jewell Aircraft did or did not do.

### B. *Application of* Daubert *Principles.*

Aside from its arguments related to the July 30 Order, Jewell Aircraft contends that Binion's methodology runs afoul of *Daubert* principles. Courts considering the admissibility of expert testimony under Rule 702, Fed.R.Evid., must perform a rigorous three-part inquiry, one component of which is considering whether "the methodology by which the expert reaches his conclusions is sufficiently reliable." *Rosenfeld v. Oceania Crusies, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citations omitted). "Under *Daubert*, the reliability of the expert's methodology is a context-specific inquiry." *Tampa Bay Water v. HDR Engineering, Inc.*, --- F.3d ----, 2013 WL 5305346, *10 (11th Cir. Sept. 23, 2013); *see also Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010) ("district courts have substantial discretion in deciding how to test an expert's reliability"). Defendant's position is that Binion's proffered expert opinions are unreliable because, *inter alia*, he reviewed insufficient documentation about the *Crouch* Action and simply guessed at the arbitrary 15% figure he touts as the percentage by which Continental's attorney's fees should be reduced to account for "possible inefficiencies" and matters unrelated to Jewell Aircraft's acts and omissions.

Defendant's *Daubert* objection is not compelling in its present form on the present factual record. As an initial matter, *Daubert* in no way precludes an expert's testimony from being reliable where it is based upon personal knowledge or experience. *See, e.g., United States v. Jennings*, 599 F.3d 1241, 1248 (11th Cir. 2010) ("A district court may decide that non-scientific expert testimony is reliable based upon personal knowledge or experience.") (citation omitted); *Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) ("there is no question that an expert may still properly base his testimony on professional study or personal experience") (citation and internal quotation marks omitted). The experiential nature of Binion's expertise does not render his opinions *per se* unreliable, equate to lack of methodology, or warrant automatic exclusion of his testimony. Moreover, defendant lacks many details as to what Binion did or did not do, or how exactly he utilized his expertise in reaching opinions such as his reduction of the total attorney's fees by a certain percentage to account for inefficiencies. Defendant does not possess those facts because it elected to file a Motion to Strike within days after receiving Binion's expert report, rather than first exploring those factual underpinnings by taking Binion's

deposition. Whatever perceived strategic advantages such a preemptive attack might have had, it bore the obvious disadvantage of sending Jewell Aircraft into *Daubert* objections without having developed the requisite factual predicate to challenge the sufficiency of Binion's knowledge of the underlying case or his procedure and reasoning for fixing the 15% figure.

The Court cannot discern at this time whether the challenged opinions by Binion satisfy *Daubert* reliability principles or not because the record has not been adequately developed. For example, "if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Augustin*, 661 F.3d 1105, 1125 (11th Cir. 2011). The record is undeveloped on this point. By plunging into a full-blown *Daubert* Motion without first taking Binion's deposition, Jewell Aircraft deprived itself of the opportunity to explore the factual basis for his opinions (*i.e.*, the specific matters he has reviewed in the *Crouch* Action), the nexus between Binion's expertise and the opinions he renders, and the particulars of the methodology by which he has reached those various opinions. The report does not set forth these matters in painstaking detail, nor do applicable rules require otherwise. Accordingly, that aspect of Jewell Aircraft's Motion to Strike is **denied**, without prejudice to its ability to renew *Daubert* reliability objections if warranted after development of a proper factual record.[12]

### C. *Other Issues.*

Although the foregoing is sufficient to resolve the Motion to Strike in its entirety, the Court pauses briefly to address a trio of recurring matters in the parties' briefs. First, Jewell Aircraft repeatedly suggests that there has been a ruling in this case forbidding use of "rough justice" methodology in apportioning fees and costs to particular claims. The undersigned has

---

[12] As an aside, there is an obvious pragmatic reason for resolving Jewell Aircraft's *Daubert* objections in this manner. For the reasons set forth in § II.A., *supra*, Binion's expert report is in flux. Insofar as he intends to offer opinions as to apportionment of attorney's fees between claims subject to indemnification and claims not subject to indemnification, those opinions must comport with the discussion of Alabama law in the July 30 Order. At present, they do not. If Binion amends his expert report to offer apportionment opinions that are consistent with the July 30 Order, the Court has no way of predicting at this time what his methodology underlying any such revised opinions will be, much less forecasting whether it will pass reliability scrutiny through the lens of *Daubert*.

made no such ruling. To be sure, Magistrate Judge Cassady has issued a pair of thoughtful opinions setting forth his belief that a rough justice framework "may not apply" here. (*See* doc. 48, at 5-6 n.4; doc 107, at 5-7.) Judge Cassady's reasoning appears facially sound, but he has not issued a definitive ruling on the topic, for the same reason that the undersigned has not. To date, the issue has not been squarely presented for adjudication. While this Court is skeptical of any "rough justice" method of apportioning Continental's defense costs between covered and non-covered claims (particularly if such apportionment takes the form of an arbitrary percentage not backed by rigorous analysis), that issue has not yet been decided, and will not be decided without the benefit of an appropriate motion and briefing.[13]

Second, it is equally true that there has been no ruling in this case that would impose an apportionment methodology requiring "line-by-line review of each and every time entry and cost item on every invoice from the *Crouch* litigation." (Doc. 85, at 20-21.) Nor is the Court convinced that the only alternatives available to the parties for apportioning damages are the opposite, binary extremes of either guessing on a percentage or engaging in unwieldy, burdensome review of reams of billing records spanning a multi-year period on a line-by-line basis. The parties are strongly encouraged to research this issue and to seek out fair, reasonable, creative and pragmatic solutions for the "untangling" of attorney's fees between compensable and non-compensable claims in the *Crouch* Action. It would be surprising, indeed, if no court or commentator has ever devised a viable solution to the disentanglement dilemma that promotes the rule of law and preserves the plaintiff's burden of proof while also accounting for the equitable, practical premise that proving damages should not be an exercise in the unduly burdensome, the prohibitively expensive or the impossible. Given the quality and quantity of attorney resources at hand on both sides, the Court is optimistic that a reasonable solution grounded in law and practicality can be forged. That said, should the parties cling to absolutist

---

[13] The parties' briefs on the Motion to Strike spar over whether Binion's analysis constituted a "rough justice" methodology or not. To be clear, any opinion or evidence fixing a percentage or amount of attorney's fees incurred in defense of the negligent installation claim based on broad approximation, without underlying specific analysis of how the attorney time was actually spent and which tasks related to which claims, would fall within the "rough justice" category.

positions on this issue, without offering reasonable alternatives, the undersigned will select one or the other.

Third, the parties' briefs include arguments about whether indemnification is available prior to any "demand" for indemnity by Continental and whether attorney's fees are recoverable for the appeal of the *Crouch* Action. Those issues and others were resolved in the summary judgment Order (doc. 109) entered on October 1, 2013, and will not be revisited here.

## III. Conclusion.

For all of the foregoing reasons, the Motion to Strike Expert Report of Mack B. Binion and Motion to Prohibit Mr. Binion from Testifying as a Witness (doc. 79) is **granted in part,** and **denied in part**. Movant having identified no colorable basis for disqualifying Binion from testifying at trial *in toto* (and, indeed, having failed to challenge certain of his proffered opinions at all), the Motion to Prohibit Mr. Binion from Testifying as a Witness is **denied**. With respect to the Motion to Strike, the Motion is **granted in part** and Binion's expert report is **stricken** to the extent that it conflicts with the July 30 Order. More precisely, the portions of that expert report in which Binion utilizes a "combined and concurring" rationale, opines that "every dollar spent in defense of the case resulted from or arose out of Plaintiffs' allegations as to the activities of Jewell," and concludes that defense costs are reimbursable as long as they "resulted from Jewell's actions and omissions during the overhaul" (whether they relate to defense of the negligent installation claim or not) are **stricken** because they do not account for applicable state-law limitations on Jewell Aircraft's contractual indemnity obligations, as set forth in the July 30 Order. In all other respects, the Motion to Strike is **denied**.

None of the foregoing forecloses Binion from submitting an amended expert report that corrects the deficiencies identified herein and properly takes into account the July 30 Order. To the extent that Continental wishes to do so, it is hereby **granted** leave to file an amended report within a schedule to be fixed by the Magistrate Judge in connection with the forthcoming supplemental Rule 16(b) Scheduling Order.

Finally, insofar as Jewell Aircraft may renew its motion to strike or exclude Binion's testimony in the future, such a motion will be summarily denied absent an affirmative showing that the grounds for relief specified therein were unavailable at the time of its original motion challenging Binion's report. Allowing a party to take multiple, serial shots at the other side's

expert using previously available arguments would compound the parties' extraordinarily burdensome pretrial motion practice, at a tremendous cost to both judicial and litigant resources.

DONE and ORDERED this 4th day of October, 2013.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE