# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CONTINENTAL MOTORS, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 12-0221-WS-C |
| | ) |
| **JEWELL AIRCRAFT, INC.,** *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on defendant Jewell Aircraft, Inc.'s Motion to Strike Expert Disclosures and to Prohibit Experts from Testifying (doc. 84). The Motion has been briefed and is now ripe.[1]

**I.      Plaintiff's Expert Disclosures.**

On March 1, 2013, plaintiff, Continental Motors, Inc. ("Continental"), filed its Disclosure of Expert Witness Testimony (doc. 77), pursuant to the applicable Rule 16(b) Scheduling Order and Rule 26(a)(2), Fed.R.Civ.P. In this disclosure, Continental identified 15 purported expert witnesses, including John Barton, Mack Binion, Norman E. Waldrop, Jr., J.W. Morris, Jr., Norman Alvares, Kenneth Orloff, Barry Schiff, Douglas Marwill, Mark Seader, William D. Carden, Rick Wartman, Robert Cauble, Bernard J. Coogan, Ron Roberts, and Tim Davis. Contemporaneously with these disclosures, Continental served copies of the written expert reports of witnesses Barton and Binion.

With respect to Waldrop, Continental did not furnish Jewell Aircraft with a written expert report; however, its disclosures did include a nearly four-page summary of Waldrop's

---

[1]      By separate Order (doc. 111) entered on October 4, 2013, the undersigned addressed defendant's objections to the proffered expert report and testimony of plaintiff's expert Mack B. Binion, Esq. This ruling is a companion to the October 4 Order, and they are intended to be read together; therefore, the undersigned will not restate the relevant factual and procedural background here, and repetition between the two Orders will be kept to a minimum.

qualifications and opinions. (Doc. 77, at 3-7.) Among other things, Continental stated that (i) Waldrop was lead trial counsel for Continental in the *Crouch* Action; (ii) he is expected to testify as a fact witness concerning work performed by Continental's lawyers in the *Crouch* Action; (iii) he is further expected to testify that Continental's attorney's fees incurred in defense of the *Crouch* Action were reasonable and necessary; (iv) he may testify that the *Crouch* plaintiffs' claims were linked to John Jewell's "improper overhaul" of the aircraft and that "if there had been no improper overhaul, CMI would not have been required to defend against the *Crouch* Plaintiffs [*sic*] claims" (*id.* at 4-5); (v) he is expected to testify that "the only real effort by the *Crouch* Plaintiffs to make an independent claim against CMI occurred very late in the litigation" (*id.* at 5); (vi) he is expected to offer his opinion that "all of the fees incurred by CMI in defense of the *Crouch* lawsuit resulted from or arose out of John Jewell's actions and omissions during the overhaul, including the installation of the magneto, and/or related to CMI's defense of the negligent installation claim … and that the fees and costs related to CMI's defense of [a] direct claim constitute less than 2 or 3% of CMI's total defense costs" (*id.* at 6); and (vii) if necessary, Waldrop may also offer expert opinions in support of Continental's fees-on-fees request in this lawsuit.

All 12 of the remaining experts disclosed by Continental provided expert reports, deposition testimony and/or trial testimony in the *Crouch* Action. Of these witnesses, ten were retained or specially employed by the *Crouch* litigants (some by the plaintiffs, others by Continental).[2] The other two, Ron Roberts and Tim Davis, were not retained as experts by any party in the *Crouch* Action, but nonetheless provided expert testimony.[3] In its disclosures in this

---

[2] To appreciate these witnesses' areas of expertise, it bears noting that plaintiff's disclosures list J.W. Morris, Jr. as a metallurgical expert, Norman Alvares as a fire expert, Kenneth Orloff as a mechanical and aeronautical engineer, Barry Schiff as a piloting expert, Douglas Marwill as an engineer specializing in FAA certification of airplanes and helicopter propulsion systems, Mark Seader as an expert in aviation piston engines, William D. Carden as a materials engineer, Richard Wartman as a mechanical engineer, Robert Cauble as an aircraft accident investigator and reconstructionist, and Bernard J. Coogan as an aircraft accident reconstructionist.

[3] According to Continental, Roberts prepared a 35-page report after the National Transportation Safety Board requested that his firm evaluate the data reported in the engine analyzer (which Roberts' firm had manufactured) on the aircraft at the time of the crash. (Doc. 77, at 11-12.) And Davis is a Continental senior product engineer who would testify about the
(Continued)

action, Continental did not tender freshly prepared expert reports for any of these 12 witnesses, but instead recited each witness's qualifications and/or field of expertise, indicated its intent to rely on and use his expert reports and testimony from the *Crouch* Action, and referred defendant generally to those materials (which have been available to defendant for inspection and copying for quite some time). (Doc. 77, at 7-13.)

In its Motion to Strike and Exclude, Jewell Aircraft raises objections to plaintiff's expert disclosures on various grounds. As an initial matter, defendant maintains that all of Continental's experts other than Binion and Barton should be excluded because Continental failed to provide written, signed reports for each of them, as required by Rule 26(a)(2)(B). Additionally, Jewell Aircraft seeks to strike plaintiff's disclosure with respect to Norman Waldrop and preclude that witness from testifying on a variety of grounds.

**II.     Plaintiff's Purported Failure to Serve Reports for the *Crouch* Experts.**

Jewell Aircraft first challenges Continental's disclosure of the 12 experts who provided reports and/or testimony in the *Crouch* Action (henceforth, the "*Crouch* Experts") as being noncompliant with the report requirement. The Federal Rules of Civil Procedure mandate that expert disclosures "must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Rule 26(a)(2)(B), Fed.R.Civ.P. Jewell Aircraft insists that Continental's failure for each *Crouch* Expert to provide a written report prepared specifically for this litigation constitutes a violation of Rule 26(a)(2)(B) and prejudices Jewell Aircraft because defendant "can only speculate as to what they might say that is of any relevance to the instant lawsuit." (Doc. 84, at 6-7.)

This objection is not well taken. Even if Jewell Aircraft has demonstrated a technical violation of Rule 26(a)(2)(B) (which the Court need not and does not decide), the exclusion remedy is unavailable if the violation is harmless. *See, e.g., Walter Int'l Productions, Inc. v. Salinas*, 650 F.3d 1402, 1410 (11th Cir. 2011) ("Each witness must provide a written report containing a complete statement of all opinions to be expressed and the basis and reasons

---

magneto, its attaching hardware, the magneto's history, and Continental's inability to issue service bulletins on magneto attaching hardware. (*Id.* at 12-13.)

therefore …. Any party that without substantial justification fails to disclose this information is not permitted to use the witness as evidence at trial **unless such failure is harmless**.") (emphasis added and citation omitted); Rule 37(c)(1), Fed.R.Civ.P. (where party fails to provide information required under Rule 26(a), remedy is exclusion "unless the failure was substantially justified or is harmless"). Defendant does not dispute that it has been given extensive access to the *Crouch* Experts' written reports, deposition and trial testimony in the underlying action.[4] Moreover, Continental's disclosures anchor each *Crouch* Expert's opinion in this case to his expert report, deposition and trial testimony in the *Crouch* Action. In stark contrast to defendant's lament that "it can only speculate as to what they might say" (doc. 84, at 6-7), Jewell Aircraft knows exactly what these witnesses' opinions are, the bases and reasons for same, and all of the other categories of information specified at Rule 26(a)(2)(B)(i)-(vi). In this regard, the record demonstrates that a veritable bonanza of evidence and written materials has been made available to Jewell Aircraft documenting each *Crouch* Expert's opinions in extensive detail; moreover, Continental's disclosures expressly confine plaintiff's intended use of the *Crouch* Experts in this case to their reports and testimony in the *Crouch* Action.

In light of these facts and circumstances, this is simply not a case where movant can have any reasoned basis for professing uncertainty as to what these witnesses would say if they were called to testify at this trial. Stated differently, the purposes of the expert disclosure rule have been fully served as to the *Crouch* Experts. *See, e.g., OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1361 (11th Cir. 2008) (recognizing that "Rule 26's expert disclosure rule is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses") (citation and internal quotation marks omitted); *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) ("the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise") (citations omitted). Because defendant has been equipped with comprehensive information from which to prepare cross-examination and consult other

---

[4] Among other things, the record shows that Continental made all expert reports prepared by the *Crouch* Experts in the *Crouch* Action available to Jewell Aircraft for inspection and copying in November 2012, and that Continental affirmatively provided copies of such reports to Jewell Aircraft in April 2013, shortly after defendant filed its Motion to Strike. (*See* doc. 95, Exh. G.)

expert witnesses, the Court readily concludes that any deficiency in plaintiff's expert disclosures with respect to the *Crouch* Experts is harmless, and that exclusion of their testimony is therefore unwarranted. The Motion to Strike and to Exclude Experts is **denied** insofar as it is predicated on Continental's purported failure to disclose expert reports for the 12 *Crouch* Experts.[5]

## III. Defendant's Objections to the Waldrop Disclosure.

With respect to plaintiff's disclosure of Norman Waldrop as an expert witness, defendant objects that his participation as a witness would violate Alabama Rules of Professional Conduct, that plaintiff did not provide a signed expert report as required by Rule 26(a)(2)(B), and that Waldrop's proposed opinions are improper in certain respects. The Court addresses each of these objections in turn.

### A. *Alabama Rules of Professional Conduct.*

Waldrop is a licensed Alabama attorney. He was Continental's lead trial counsel in the *Crouch* Action. He is not listed as counsel of record for Continental in the present litigation and, indeed, has neither filed a notice of appearance nor (apparently) performed any work to represent plaintiff's interests in this action. Instead, three other lawyers from Armbrecht Jackson LLP, the law firm at which Waldrop is a partner, are counsel of record for Continental in this fee dispute

---

[5] That said, Jewell Aircraft has raised important and (thus far) unanswered questions about the relevance of the *Crouch* Experts' opinions to this contractual indemnity litigation. The Court is skeptical that any of these experts' testimony will be helpful or relevant to any issue joined in this litigation. The *Crouch* Action will not be retried here. This is not a case about investigating causes of, or affixing blame for, an airplane crash. It is a case about liability for and apportionment of attorney's fees pursuant to a contractual indemnity provision. To the extent that Continental assumes that the *Crouch* Experts' opinions may be properly offered here to show that Jewell Aircraft engaged in wrongdoing that was the but/for cause of the accident and that such causation entitles Continental to indemnity of its attorney's fees incurred in the *Crouch* Action on an order of magnitude approaching 100 cents on the dollar, Continental is strongly advised to study this Court's rulings of July 30, 2012 (doc. 23), October 1, 2013 (doc. 109), and October 4, 2013 (doc. 111). Those rulings should focus the parties' trial preparations and aid them in identifying which categories of evidence are and are not relevant to the narrow issues remaining. Even though Jewell Aircraft has raised a relevance objection in its present Motion to Strike, the Court will not resolve that issue now because (i) the record has not been developed with both sides' positions on this point, and (ii) Continental did not have the benefit of the October 1 and October 4 Orders when it made its disclosures. To the extent that the parties prove unable to agree to the relevance or admissibility of particular expert opinions that one side or the other intends to offer at trial in light of the above-mentioned rulings, the Court expects the parties to frame such questions via motion in limine at an appropriate time.

with Jewell Aircraft.[6] The record is devoid of any indication that Waldrop intends to appear in this action as additional trial counsel for Continental.

As noted *supra*, Continental's expert disclosures reflect that plaintiff intends to call Waldrop as a fact and expert witness at trial. Among other things, plaintiff plans to have Waldrop testify about the work that he and his co-counsel did in the *Crouch* Action, opine as to the reasonableness and necessity of the more than $2 million in billings to Continental during those proceedings, explain that the entire *Crouch* Action stemmed from John Jewell's "improper overhaul" of the subject aircraft, and assert that all but 2 or 3% of Continental's defense costs in the *Crouch* Action "resulted from or arose out of John Jewell's actions and omissions … and/or related to CMI's defense of the negligent installation claim." (Doc. 77, at 6.) Jewell Aircraft insists that such contemplated testimony would violate Rule 3.7 of the Alabama Rules of Professional Conduct, and that this Court should exclude Waldrop as a witness on that basis.

"[R]ules of professional conduct generally disapprove of lawyers testifying at proceedings in which they are also advocates." *Putman v. Head*, 268 F.3d 1223, 1246 (11th Cir. 2001). The Alabama Rules of Professional Conduct speak to such a scenario as follows: "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness, except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." Rule 3.7(a). There is a stark threshold defect in Jewell Aircraft's reliance on Rule 3.7(a) to challenge Waldrop's ability to testify. On its face, the rule applies only where an attorney is "act[ing] as advocate at a trial." Waldrop will be doing no such thing. He will not examine and cross-examine witnesses. He will not give opening statements or closing arguments on plaintiff's behalf. He will not lodge objections to defendant's proposed evidentiary submissions or participate in sidebar conferences. He will not offer plaintiff's exhibits into evidence or address the jury or the Court from the podium or counsel table. Rather, the sum total of Waldrop's involvement in this trial will be to sit on the witness stand if and when called, and to answer questions posed by counsel of record for both sides as to his activities and observations in the *Crouch* Action and any expert opinions that he

---

[6] Also representing Continental in these proceedings are two attorneys from another law firm, Burns, Cunningham & Mackey, P.C.

may be permitted to give. Waldrop's role in this action is quintessentially that of witness, not advocate; therefore, his contemplated testimony in no way implicates Rule 3.7(a), or the specific risks of jury confusion, multiple hats, and blurred roles that the rule was designed to alleviate. *See, e.g.,* Official Comment to Rule 3.7 ("A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.").[7]

The crux of Jewell Aircraft's attempt to satisfy the "act as advocate at trial" component of Rule 3.7(a) is its argument that "Mr. Waldrop's lengthy disclosure smacks of an advocate arguing his case" and that his "staunch advocacy for CMI and its positions is at odds with the letter and spirit of Rule 3.7." (Doc. 84, at 12; *see also* doc. 96, at 14-15.) Such an imaginative reading of the term "advocate at a trial" finds no support in either the text or official comment to Rule 3.7(a), and Jewell Aircraft identifies not a single authority that has embraced it.[8] If

---

[7] *See also Ramey v. District 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282 (2nd Cir. 2004) ("The concerns implicating the rule are that (1) the lawyer will appear to vouch for his own credibility, (2) the lawyer's testimony will put opposing counsel in a difficult position when he has to vigorously cross-examine his lawyer-adversary and seek to impeach his credibility, … (3) there may be an implication that the testifying attorney may be distorting the truth as a result of bias in favor of his client," and (4) "it may so blur the line between argument and evidence that the jury's ability to find facts is undermined.") (citations and internal marks omitted); *Smaland Beach Ass'n, Inc. v. Genova*, 959 N.E.2d 955, 962 (Mass. 2012) ("The primary purpose of the rule is to prevent the jury as fact finder from becoming confused by the combination of the roles" of advocate and witness) (citation and internal quotation marks omitted). Because Waldrop will be participating in this trial solely as a testifying witness, the risks that Rule 3.7(a) was designed to minimize do not come into play.

[8] In addition to common sense and logic, there are authorities to the contrary. *See, e.g.,* 1 *McCormick on Evidence* (7th ed.), § 68 ("If the lawyer both testified and **continued to try the case**, there is a risk that the jury might confuse the lawyer's testimony as a witness with the lawyer's arguments as an advocate") (emphasis added); *Crussel v. Kirk*, 894 P.2d 1116, 1120 (Okla. 1995) ("There is nothing in the record to show that Malloy, Jr., acted as an *advocate at trial.* He neither presented arguments nor examined witnesses. … The Rule was clearly *not* an impediment to allowing Malloy, Jr.'s testimony in this case.") (footnotes omitted). The difference between an advocate and a witness has been succinctly summarized as follows: "As an advocate, the lawyer's task is to present the client's case and to test the evidence and arguments put forth by the opposing side. A witness, however, provides sworn testimony concerning facts about which he or she has personal knowledge or expertise." ABA Model Rules of Professional Conduct (7th ed.), § 3.7, annotation. Waldrop's role at trial will be nothing
(Continued)

defendant's position were correct, then <u>every</u> lawyer testifying as an expert witness would be subject to exclusion, discipline, and/or disqualification under Rule 3.7, whether the lawyer had anything to do with representation of a party in the case or not. After all, expert witnesses typically testify in favor of the party that hired them and serve as that party's "advocate from the stand." Under Jewell Aircraft's reasoning, an attorney who does nothing more than take the witness stand is necessarily serving a dual role of advocate-witness that requires his exclusion as a witness because a jury might construe his testimony as advocacy. Such a contorted application is well beyond the realm of the harms Rule 3.7 was designed to address.[9] The Court therefore does not endorse Jewell Aircraft's attempt (untethered to any judicial opinion, commentator or textual foundation in the rule or its comments) to stretch Rule 3.7(a) far beyond the limited purposes for which it was crafted to encompass circumstances that it was never intended to address, all in furtherance of securing a strategic advantage at trial.

Nor does Jewell Aircraft strengthen its position by insinuating that there is something nefarious or unsavory about three of Continental's attorneys of record and Waldrop all working for the same law firm. The Alabama rules provide that "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness," Rule 3.7(b), absent conflict of interest concerns that are not present here.[10] Notwithstanding that Rule 3.7(b) specifically refutes any notion of imputed disqualification in this context, Jewell Aircraft presses the point by arguing that Continental would contravene "the spirit of Rule 3.7 by having Mr.

---

more than to provide sworn testimony from the witness stand concerning facts about which he has personal knowledge or expertise. He is participating in trial as a witness, not an advocate.

[9] The paradigmatic example of those harms would be a lawyer who makes an opening statement to the jury, cross-examines the other side's witnesses, then walks to the witness stand and testifies from personal knowledge and expertise, before leaving the witness stand and explaining to the jury in closing argument that his own testimony is persuasive and warrants a verdict in favor of his client. The confusion and entanglement inherent in that example does not exist here, yet that is the type of situation Rule 3.7 was designed to combat.

[10] In light of Rule 3.7(b)'s unequivocal language, the Court rejects Jewell Aircraft's argument that "CMI cannot have it both ways by having its law firm put up its senior partner as one of its primary witnesses and still remain as counsel in the case." (Doc. 84, at 12.) Contrary to defendant's unsupported attack, the applicable rules of professional conduct expressly authorize such a practice.

Waldrop's law partners parade him in front of the jury as its important expert on the key issues in the case." (Doc. 96, at 12.) The Court disagrees. Waldrop would be wearing only one hat, that of witness. The other lawyers from his firm would likewise be wearing only one hat, that of advocate. The spirit of Rule 3.7, namely to prevent the confusion and prejudice that may occur when roles of advocate and witness are intertwined and the same lawyer wears multiple hats, is not implicated by this arrangement. The Court therefore declines Jewell Aircraft's invitation to cast aside or rewrite the express language of Rule 3.7(b) (based on nebulous theories about the "spirit" of the rule) to expand the advocate-witness prohibition to exclude a lawyer witness from testifying at a trial at which other members of his firm are advocates.

In a last-ditch effort to brand Waldrop an advocate-witness who must be excluded, defendant protests that even though Rule 3.7 would allow Waldrop to testify and other lawyers at his firm to represent Continental, this Court should bar his testimony anyway because of "how this will look to the jury, and how it will unfairly prejudice JA at trial." (Doc. 96, at 12.) Jewell Aircraft does not explain its rhetoric, much less offer any persuasive showing of prejudice.[11] As best the Court can discern, defendant's argument is that the professional, co-worker relationship between Waldrop and several members of Continental's trial team will poison the jury against Jewell Aircraft by making the jury more likely to believe Waldrop's testimony and Continental's trial lawyers' arguments. If that is the concern, then there is a simple fix, to-wit: Plaintiff could be barred from informing the jury that Waldrop and its trial lawyers work for the same law firm. In that event, the jury would remain blissfully unaware of any linkage between the testifying witness and the lawyers conducting direct examination of him, and would not know that "Mr. Waldrop's law partners parade him in front of the jury as its important expert" (doc. 96, at 12). Such a remedy would alleviate defendant's stated fears of prejudice while preserving plaintiff's right to call the witnesses and retain the counsel that it chooses.[12]

---

[11] Defendant's logic is impenetrable when it asserts that "If the Court were to permit Mr. Waldrop's firm to put him up as an expert witness at trial on a hotly contested issue, there is a real chance that a jury would be unfairly biased against JA." (Doc. 84, at 12.) Defendant has not explained how "unfair bias" may result from this circumstance, and the Court does not perceive any such likelihood.

[12] If defendant desires for the relationship between Waldrop and Continental's trial lawyers to be hidden from the jury, and if plaintiff disagrees, then defendant should file a motion in limine at the appropriate time. Of course, what's good for the goose is good for the gander. If (Continued)

For all of these reasons, the undersigned is of the opinion that Waldrop's ability to testify as a fact and expert witness for Continental at trial is in no way foreclosed or abridged by operation of Rule 3.7 of the Alabama Rules of Professional Responsibility. He will not be acting in a prohibited advocate-witness role. The rules do not require imputed disqualification of other lawyers at his firm as advocates at a trial in which he is a testifying witness. And defendant has not made any showing of prejudice, much less one that would warrant the harsh, drastic remedy of excluding Waldrop, as opposed to less restrictive alternatives that are or may be readily available. This aspect of defendant's Motion to Strike is **denied**.

### B.  *Failure to Submit an Expert Report.*

Next, Jewell Aircraft maintains that Waldrop should be excluded because Continental did not furnish a signed, written expert report in its disclosures, as required by Rule 26(a)(2)(B), discussed *supra*. Rather than preparing the requisite report and mooting this legal issue so that party and judicial resources might be redirected elsewhere, plaintiff chose to litigate the question of whether Rule 26(a)(2)(B) applies to this witness. And rather than accepting the detailed information in plaintiff's disclosures concerning Waldrop's opinions as sufficient to facilitate its cross-examination and expert consultation activities, defendant likewise opted to litigate this esoteric, collateral issue.

Be that as it may, plaintiff's position is that Rule 26(a)(2)(B) does not reach Waldrop "because he will be testifying as an actor and viewer with respect to the transactions that are a

---

plaintiff were barred from airing the shared law firm affiliations of Attorneys Waldrop, Dean, Roberts and Ginger to the jury to prop up the credibility of Waldrop's testimony or the persuasiveness of his law partners' trial advocacy, then defendant would likewise be unable to exploit such affiliations on cross-examination as a source of potential bias in Waldrop's testimony and expert opinions. Defendant has already alluded to this potential line of attack. *See* doc. 96, at 14 ("Mr. Waldrop would certainly have a strong interest in his firm's success in this case, after racking up well over $2,000,000 in fees and expenses in defending the Crouch lawsuit"). Of course, the Court does not presume to tell defendant how to conduct its trial strategy, and will consider any such motion in limine that defendant may file as trial approaches. What the Court will not do is strike Waldrop as a witness because of some ill-defined, unexplained fear that the jury's knowledge of his relationship with Continental's trial lawyers would work unfair prejudice against Jewell Aircraft, particularly when knowledge of such a relationship may be the cornerstone of a bias-based cross-examination strategy that Jewell Aircraft may use to discount and discredit Waldrop's testimony in the jury's eyes.

part of the subject matter lawsuit." (Doc. 95, at 18 (internal quotation marks omitted).) The reasoning is that Waldrop will be testifying about events in the *Crouch* Action that he personally observed and in which he participated directly. There is authority excusing expert witnesses from submitting Rule 26(a)(2)(B) reports in that context. *See, e.g., Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113-114 (1st Cir. 2003) ("a party need not identify a witness as an expert so long as the witness played a personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit the witness's knowledge of those events"); *Brown v. Best Foods, A Division of CPC Int'l, Inc.*, 169 F.R.D. 385 (N.D. Ala. 1996) (explaining that if expert's planned testimony was acquired "not in preparation for trial, but rather because he was an actor or viewer with respect to transactions or occurrences that are a part of the subject matter of the lawsuit," no Rule 26 written report is necessary) (citations omitted).

Plaintiff's argument is fine, as far as it goes. The rub is that Waldrop's contemplated testimony extends substantially beyond testifying as an actor and viewer to what happened in the *Crouch* Action. In addition to testifying about these experiences and observations, Waldrop will apparently be testifying about opinions that were not formulated in the course of his representation of Continental in the *Crouch* Action, but that he prepared for and in anticipation of this fee litigation (*i.e.,* reasonableness of work performed by others, allocation of billings between particular claims). In the undersigned's view, these sorts of opinions cross the line from mere "personal observation" testimony outside the ambit of Rule 26(a)(2)(B) to expert opinions prepared for litigation that are within the scope of that rule. *See, e.g., Prieto v. Malgor*, 361 F.3d 1313, 1319 (11th Cir. 2004) (where expert was "providing a technical evaluation of evidence he had reviewed in preparation for trial … his role was simply not analogous to that of a treating physician, the example offered by the Advisory Committee an employee exempt from the written report requirement").[13]

---

[13] *See generally Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317-18 (11th Cir. 2011) ("when a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony"); *Phillips v. American Honda Motor Co.*, 438 F. Supp.2d 1328, 1330-31 (S.D. Ala. 2006) (treating physicians are subject to Rule 26(a)(2) disclosures to the extent they offer expert opinions about causation "unless the determination of causation was necessary for treatment"); *Indemnity Ins. Co. of North America v. American Eurocopter LLC*, 227 F.R.D. 421, 423-24 (M.D.N.C. 2005) ("When the treating physician goes beyond the observations and opinions obtained by treating the
(Continued)

For the foregoing reasons, the Court agrees with defendant that Waldrop must comply with Rule 26(a)(2)(B)'s written report requirements insofar as he intends to testify about opinions acquired or developed in anticipation of trial in this fee litigation (as opposed to fact witness testimony about what he did and what he observed in the course of his participation in the *Crouch* Action, as to which matters no written report is necessary because Waldrop is a fact witness). He has not done so; therefore, plaintiff's noncompliant disclosure will be **stricken** as to Waldrop. From plaintiff's standpoint, however, all is not lost. There is time to correct this disclosure omission without triggering the draconian sanction of witness exclusion, as championed by Jewell Aircraft. The Court will not preemptively exclude Waldrop at this time from testifying at trial. Just as another plaintiff's expert witness (Mack Binion) has been granted leave by separate Order to prepare an amended expert report within the timeframe to be specified by Magistrate Judge Cassady in connection with the forthcoming supplemental Rule 16(b) Scheduling Order, so too will Waldrop receive an opportunity to comply with Rule 26(a)(2)(B)'s written report requirement. If he does not do so, then defendant may renew its Motion to Exclude at an appropriate time.[14]

### C. *Defendant's Substantive Objections to Waldrop's Opinions.*

Defendant's final set of challenges to Waldrop's disclosure includes assertions that he has employed improper but/for causation methodology, that he offers conclusory and speculative

---

individual and expresses opinions acquired or developed in anticipation of trial, then the treating physician steps into the shoes of an expert who may need to provide a Rule 26(a)(2)(B) report."); *Brown*, 169 F.R.D. at 389 (treating physician who reviews records of another provider to render opinion testimony as to that provider's treatment must comply with Rule 26(a)(2)(B) requirements).

[14] The Court does not expect compliance to be a problem, nor does it anticipate continuing litigation from the parties over this eminently avoidable Rule 26(a)(2)(B) dispute. After all, in its original brief opposing defendant's Motion to Strike, plaintiff offered to have Waldrop sign a written disclosure that complied in all particulars with Rule 26(a)(2)(B). (*See* doc. 95, at 19.) Despite the fertile ground for compromising this issue in a matter that addressed both sides' concerns, the parties proceeded to litigate this issue to the hilt. That sequence of events is symptomatic of the unhelpful scorched-earth litigation approach that has characterized these proceedings with regrettable frequency.

opinions, and that his opinions should be excluded as substantially more prejudicial than probative under Rule 403, Fed.R.Evid. These objections may be dispatched quickly.

Waldrop's methodology suffers from many of the same flaws documented in the October 4 Order (doc. 111) concerning Binion's written expert report. The Court will not reproduce the October 4 Order's analysis here; however, the primary defect is that Waldrop overlooks the undersigned's ruling on the Rule 12(b)(6) Motion and its construction of Alabama law's limitations on contractual indemnity, which now governs this action. In its present form, the Waldrop disclosure is contradictory to those principles and therefore not admissible.[15] Plaintiff's disclosure of Waldrop's expert opinions is **stricken** in that regard, provided, however, that he may submit a written expert report that corrects this deficiency.

Furthermore, defendant is correct that Waldrop's disclosure contains inadmissible conclusory/speculative opinions. For example, he repeatedly characterizes John Jewell's overhaul of the aircraft as "improper." Inasmuch as Waldrop has not been tendered as an expert in fields of aviation mechanics and repair, he will not be permitted to offer opinions to the jury as to whether John Jewell's overhaul activities were proper or improper.[16] Should such conclusory/speculative opinions seep into Waldrop's written report or proffered testimony, the Court will entertain a motion for limine by defendant at an appropriate time.

Finally, defendant contends that Waldrop's testimony fails a Rule 403, Fed.R.Evid., balancing analysis and that it will be prejudiced because "[t]he jury will know that Mr. Waldrop's law firm is representing CMI." (Doc. 84, at 22.) The Court has already examined and rejected this prejudice argument, *supra*. If defendant does not want the jury to know that

---

[15] For example, Waldrop offers an opinion that "all of the fees incurred by CMI in defense of the *Crouch* lawsuit resulted from or arose out of John Jewell's actions and omissions during the overhaul … and/or related to CMI's defense of the negligent installation claim." (Doc. 77, at 6.) This opinion is substantively identical to Binion's opinion that was struck by the October 4 Order, and is inadmissible for precisely the same reasons.

[16] Plaintiff's rejoinder that Waldrop was merely describing the evidence, rather than offering opinions, is disingenuous. As one example, the disclosure includes a statement that "if there had been no improper overhaul, CMI would not have been required to defend." (Doc. 77, at 4-5.) Via that statement, he is offering a definitive conclusion that there was an "improper overhaul," a conclusion that Waldrop is unqualified to make. It therefore has no place in any expert disclosure or testimony he might give, and his written report and testimony should take great care to avoid rendering opinions masquerading as mere characterizations of the evidence.

Waldrop works for one of the law firms that represents Continental at trial, then it has a ready means of keeping that information from the jury. If, however, it chooses to put that information before the jury as a means of arguing bias by Waldrop, then it must live with the consequences of that strategy decision. Either way, Waldrop's proposed testimony is not unfairly prejudicial to defendant and will not be excluded under Rule 403.

**IV.     Conclusion.**

For all of the foregoing reasons, defendant's Motion to Strike CMI's Expert Disclosures and Motion to Prohibit those Experts from Testifying (doc. 84) is **granted in part**, and **denied in part**. The Motion to Strike is **granted** and Continental's expert disclosures are **stricken** insofar as Waldrop's disclosure (i) is not accompanied by a Rule 26(a)(2)(B) written report, (ii) fails to account for applicable state-law limitations on Jewell Aircraft's contractual indemnity obligations, as set forth in this Court's previous orders, and (iii) includes improperly speculative of conclusory opinions. In all other respects, the Motion to Strike and to Prohibit Experts from Testifying is **denied**.

None of the foregoing forecloses Continental from submitting an amended expert disclosure that, with respect to Waldrop, includes an expert report that complies with Rule 26(a)(2)(B) and otherwise corrects the deficiencies identified herein. To the extent that Continental wishes to do so, it is hereby **granted** leave to file an amended/supplemental expert disclosure within a schedule to be fixed by the Magistrate Judge in connection with the forthcoming supplemental Rule 16(b) Scheduling Order.

Finally, insofar as Jewell Aircraft may renew its motion to strike or exclude Waldrop's testimony in the future, such a motion will be summarily denied absent an affirmative showing that the grounds for relief specified therein were unavailable at the time of its original motion challenging Continental's expert disclosures. Allowing a party to take multiple, serial shots at the other side's expert using previously available arguments would compound the parties' extraordinarily burdensome pretrial motion practice, at a tremendous cost to both judicial and litigant resources.

DONE and ORDERED this 17th day of October, 2013.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE